513 So.2d 1303 (1987)
SAUNDERS LEASING SYSTEM, INC., a Delaware Corporation, Appellant,
v.
GULF CENTRAL DISTRIBUTION CENTER, INC., Appellee.
No. 86-1688.
District Court of Appeal of Florida, Second District.
September 18, 1987.
Rehearing Denied October 22, 1987.
*1304 Edward O. Savitz of Bush, Ross, Gardner, Warren & Rudy, Tampa, for appellant.
George W. Phillips, Tampa, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, Saunders Leasing System, Inc. ("Saunders"), appeals the $572,000 March 25, 1986 final judgment entered in favor of Gulf Central Distribution Center, Inc. ("Gulf Central"). Saunders raises nine issues on appeal.
These proceedings stem from a Vehicle Lease and Service Agreement that the parties entered in early September of 1982. Under the agreement, Saunders agreed to lease to Gulf Central sixteen 1979 International Harvester sleeper tractor trucks. The parties estimated that the trucks would be delivered on September 4, 1982. When Saunders delivered six trucks on September 7, 1982, Gulf Central inspected and rejected all six. Saunders took the trucks back to its garage to correct the problems. During the next eight days, Gulf Central inspected the original six and certain additional trucks at Saunders' location in Tampa, noting what remained to be corrected.
*1305 Between September 7, 1982, and September 15, 1982, Gulf Central decided it would not take delivery of less than all sixteen vehicles. Gulf Central nevertheless proceeded under the contract, and provided Saunders with a letter of credit that was required under the agreement.
On September 15, 1982, Jay Whitson, Saunders' marketing manager, assured Bill Gregory, president of Gulf Central, that all deficiencies would be corrected and that Saunders would perform an "in-frame" (engine overhaul) on any truck questioned by Gulf Central.
On the following day, September 16, 1982, Bill Gregory wrote to Whitson to advise him that Gulf Central would not proceed under the contract. In the letter, Gregory asked Whitson to compose a list of the damages Saunders had incurred in preparing to perform under the contract so that Gulf Central could possibly reimburse it. In response, on September 17, 1982, Saunders submitted a letter in which it estimated its expenses to have been $97,000.
On October 12, 1982, Gulf Central filed a one-count complaint against Saunders for breach of contract. Gulf Central alleged that Saunders breached the contract by failing to deliver the vehicles in accordance with the terms of the agreement. Gulf Central also sought to enjoin Saunders from using the letter of credit. The court did not issue an injunction because Saunders advised the court that it did not intend to proceed against the letter of credit during the litigation.
On July 27, 1983, Saunders filed a counterclaim in which it alleged that Gulf Central had breached the Vehicle Lease and Service Agreement.
Almost two years later, Gulf Central filed an amended complaint, adding a request for damages for fraud. In Count I, Gulf Central alleged that Saunders had breached the contract when it induced Gulf Central to enter into the contract by fraudulently representing: (1) That all trucks delivered would have mileage between 150,000 and 175,000 miles at the time of delivery; and (2) that all trucks delivered would be in first-class condition, particularly with respect to driver comfort items, such as radio, heater and air conditioning. Gulf Central alleged that, as a result of the breach, it had lost the benefit of the bargain, including lost savings, lost resale value, lost profits and damages incurred in preparing to perform[1].
In Count II, Gulf Central alleged that Saunders had falsely and fraudulently misrepresented the trucks' mileage and condition with the knowledge that Gulf Central would rely on those representations, and with the knowledge that it, Saunders, did not intend to live up to those representations. Prior to trial, the court denied Saunders' motion in limine to exclude any evidence of Gulf Central's alleged lost savings.
On March 21, 1986, the jury found in favor of Gulf Central on the breach of contract count and awarded Gulf Central $270,000. It also found in favor of Gulf Central on the fraud count and awarded Gulf Central $2,000 plus $300,000 in punitive damages. The court denied Saunders' post-trial motions, entered a $1,308.40 judgment for costs and ruled for Gulf Central on Saunders' counterclaim. Saunders filed a timely notice of appeal.
Saunders argues first that it did not breach the contract as a matter of law since the contract itself excluded all express and implied warranties and contained an integration clause. Saunders' alleged breach was based on several factors: (1) The trucks bore higher mileages than what was promised; (2) the trucks were in poor condition and; (3) the trucks were delivered late.
*1306 While Gulf Central alleges that Saunders had promised that each vehicle would have a mileage of from 150,000 to 170,000, and would be in first-class condition, those promises were not contained in the final draft of the intensely negotiated contract. Gulf Central attempts to explain the omission by asserting that Saunders threatened to cancel the deal if a contract were not signed on a particular weekend. Yet, on cross-examination, Bill Gregory of Gulf Central admitted that he, too, wanted the deal because it was so favorable to his company and that it was too good a deal to pass up. The evidence does not support a conclusion that Bill Gregory was fraudulently induced to enter a contract he did not wish to enter.
Since the terms that were allegedly violated (mileage and condition) were not contained in the contract, they cannot form the basis for a breach of contract unless they could be proved without violating the parol evidence rule. Under that rule, in the absence of fraud, all prior and contemporaneous agreements are deemed merged into the executed contract. As noted, the evidence does not support a finding of fraud. The contract itself specifically states that it represents the parties' entire agreement and that all express and implied warranties and other representations were disclaimed. An express exclusion of implied warranties and other representations that predate the contract is enforceable. Barile Excavating & Pipeline Co. v. Vacuum Under-Drain, Inc., 362 So.2d 117 (Fla. 1st DCA 1978).
In addition, while the contract is quite specific regarding other requirements for the tractors, the allegedly breached terms of mileage and condition are noticeably absent. It must be borne in mind here that the parties negotiated intensely and that Gulf Central had as much control over the final document as did Saunders. In fact, Gulf Central's attorney, Bob Mora, added the final handwritten revisions.
While Gulf Central argues that express disclaimers of warranties are ineffective in fraud in the inducement cases, we can find no competent evidence that Saunders fraudulently induced Gulf Central to enter the contract. As noted earlier, Bill Gregory of Gulf Central admitted that he very much wanted to sign the contract and that the deal was too good to turn down. There is no evidence that anyone from Saunders intended to mislead Gulf Central. The elements of misrepresentation are: (1) Misrepresentation of a material fact; (2) knowledge by the misrepresenter, or representations made without knowledge of the truth or falsity of those representations, or representations made in circumstances where the representer should have known of the falsity of those representations; (3) an intention to induce reliance; and (4) resulting injury to the party acting in justifiable reliance on those misrepresentations. Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823 (1947).
First, any misrepresentation regarding mileage or condition was not material because Saunders agreed to maintain the vehicles and provide substitute vehicles within four hours after notice that a given vehicle was not operational. Even Bill Gregory admitted that if Saunders had corrected the quality deficiencies on the tractors, he would have accepted the tractors notwithstanding the mileage. Gulf Central also admitted that all of the noted deficiencies could have been corrected. In fact, Saunders was correcting them when it received notice of Gulf Central's repudiation.
Second, there is no evidence that Whitson knew that the trucks that were to be delivered would have mileages in excess of 175,000 miles or would not comport with Gulf Central's desires as to condition. Neither is there evidence that Whitson should have known of same.
Third, Whitson did not describe the tractors as "creampuff[s]." That was Bill Gregory's term.
Fourth, while Gulf Central argues that it would not have entered into the contract but for Saunders' alleged misrepresentations, that argument is contrary to the obvious fact that if those terms were so material to Gulf Central's bargain, they would or should have been included in the *1307 contract. Since they were not, and particularly since Gulf Central's attorney added the last revisions to the contract, the argument must fail.
Fifth, Bill Gregory apparently did not feel defrauded when he wrote his September 16 letter. In that letter, Bill Gregory wrote: "I spent a very restless night last night. It is not often, in ones [sic] lifetime, a person meets one like yourself. You know your business extremely well and are a most powerful salesman. You are a man I would be proud to be associated with in any endeavor." This is not the language of a man who feels he has been defrauded. There was simply no evidence of fraud in the inducement here and the express disclaimer of warranties is, therefore, effective. Barile Excavating & Pipeline Co. v. Vacuum Under-Drain, Inc., 362 So.2d 117 (Fla. 1st DCA 1978).
Gulf Central also argued that Saunders breached the contract when it failed to deliver the trucks on September 4. Since that date was expressly an "estimated" date of delivery only, failure to meet that specific date will not support a claim of breach.
We conclude that Gulf Central anticipatorily repudiated the contract on September 16, 1982, when it delivered to Saunders written notification of Gulf Central's repudiation. The evidence reveals that Saunders adhered to its contract in all respects, but was discharged from further performance when it received Gulf Central's September 16, 1982 letter. See Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla. 1982).
In any event, the contract provided that Saunders' failure to perform would constitute default only if Gulf Central notified Saunders in writing and gave Saunders thirty days to correct the default. Gulf Central admits that it never gave Saunders either notice or thirty days to cure. Gulf Central's witnesses admitted that the deficiencies could have been corrected. Whitson told Gulf Central that Saunders would, at its own expense, perform in-frames on all trucks. Gulf Central simply failed to adhere to the contract terms and, therefore, anticipatorily breached the contract. The jury verdict against Saunders is not supported by competent, substantial evidence and the trial court erred in not finding the verdict contrary to the manifest weight of the evidence.
Saunders' final point on appeal urged us to remand for assessment of damages in favor of Saunders for Gulf Central's anticipatory breach of the contract. In Hospital Mortgage Group v. First Prudential Development Corp., the supreme court, quoting with approval Restatement (Second) of Contracts § 253 (1979), held that a nonbreaching party is relieved of its duty to tender performance and has an immediate cause of action against the breaching party. However, the supreme court there also held that the anticipatory breach alone does not entitle the nonbreaching party to damages. "Anticipatory repudiation obviates the requirement that the conditions be performed, but not that they be performable." 411 So.2d at 182. That issue was presented to the jury and rejected.
We, therefore, reverse the $572,000 judgment entered in favor of Gulf Central on its complaint below and affirm the judgment against Saunders on its counterclaim below.
HALL and THREADGILL, JJ., concur.
NOTES
[1] We note parenthetically that Gulf Central improperly characterized Count I as breach of contract. Since Gulf Central alleged fraud in the inducement, it essentially alleged that the contract was voidable. 11 Fla.Jur.2d Contracts § 35; 17 Am.Jur.2d Contracts § 151. Gulf Central then voided the contract when it decided not to proceed under it. Gulf Central should have more properly alleged that there was no contract and requested rescision and any directly resulting damages.