**MEDIMPORT S.R.L. d/b/a Halimed Medical Equipment, Plaintiff,**

v.

**Francisco V. CABREJA, et al., Defendants.**

**No. 12–22255–CIV.**

United States District Court, S.D. Florida, Miami Division.

March 12, 2013.

Joseph Ronald Denman, Paul Dewey Turner, Joshua B. Spector, Perlman, Bajandas, Yevoli & Albright, P.L., Miami, FL, for Plaintiff.

Peter Emerson Berlowe, Assouline & Berlowe, P.A., Miami, FL, Peter Andrew Koziol, Assouline & Berlowe, P.A., Boca Raton, FL, for Defendant.

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DISMISSING IN PART MOTION TO DISMISS

FEDERICO A. MORENO, District Judge.

THE MATTER was referred to the Honorable Alicia M. Otazo–Reyes, United States Magistrate Judge for a Report and Recommendation on Defendants' Motion to Dismiss (**D.E. No. 16**), filed on *July 10, 2012*. The Magistrate Judge filed a Re-

port and Recommendation (**D.E. No. 54**) on *February 5, 2013*. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge Alicia M. Otazo–Reyes' Report and Recommendation (**D.E. No. 54**) on *February 5, 2013* is **AFFIRMED** and **ADOPTED.** Accordingly, it is

> **ADJUDGED** that:
>
> (1) Counts 2, 3, 4, 5, 6 and 10 of Plaintiff's Verified Complaint (**D.E. No. 1**), filed on *June 15, 2012* are DISMISSED without prejudice.
>
> (2) Counts 1 and 9 of Plaintiff's Verified Complaint (**D.E. No. 1**), filed on *June 15, 2012* are DISMISSED without prejudice as to Defendant Raquel Cabreja.
>
> (3) Defendants' Motion to Dismiss (**D.E. No. 16**), filed on *July 10, 2012* is otherwise DENIED.
>
> (4) Plaintiff is GRANTED leave to file an amended complaint in accordance with the Magistrate Judge's Report and Recommendation (**D.E. No. 54**) on *February 5, 2013*.

## *REPORT AND RECOMMENDATION ON MOTION TO DISMISS*

ALICIA M. OTAZO–REYES, United States Magistrate Judge.

THIS CAUSE came before the Court upon Defendants Francisco V. Cabreja (hereafter "Cabreja"), Raquel E. Cabreja (hereafter "Raquel Cabreja"), Treve Investments, Ltd. (hereafter "Treve"), and Trevemed, LLC's (hereafter "Trevemed")

(collectively, "Defendants") Motion to Dismiss [D.E. 16]. This matter was referred to the undersigned by the Honorable Federico A. Moreno, Chief United States District Judge for the Southern District of Florida, pursuant to Title 28, United States Code, Section 636 [D.E. 10]. For the reasons stated below, the undersigned respectfully recommends that Defendants' Motion to Dismiss [D.E. 16] be **GRANTED IN PART AND DENIED IN PART.**

## *FACTUAL AND PROCEDURAL BACKGROUND*

On June 15, 2012, Plaintiff Medimport, S.R.L., ("Medimport") filed a Verified Complaint against Defendants alleging that they conspired to and succeeded in usurping Medimport's business opportunities by conducting business under Medimport's registered trademark and trade name "Halimed Medical Equipment" without authorization. *See Verified Complaint* [D.E. 1 at ¶¶ 1, 39]. Medimport attached to its Verified Complaint a "Distribution Agreement" dated November 16, 2009 [D.E. 1–1].[1]

### I. *Distribution Agreement*

The parties to the Distribution Agreement were Treve, through its director, Cabreja (the "Distributor"), and Filippo Pascucci, as the "legal representative and owner of the Halimed Medical Products brand" (the "Principal"), and its purpose was to market the Halimed medical products in the United States, South America and the Caribbean. *See* Distribution Agreement [D.E. 1–1 at ¶ (1) ].[2] By virtue of the Distribution Agreement, the Principal granted the Distributor "exclusive representation rights to sell Halimed Medical

---

1. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R.Civ.P. 10(c).

2. The Distribution Agreement uses the term "Distributer," which is a misnomer. Therefore, the undersigned uses the term "Distributor."

Products on behalf of the Principal" in the designated territory effective November 1, 2009. *See id.* [D.E. 1–1 at ¶ 1.01]. The Distribution Agreement also provides that:

> The Distributer [sic] may not sell or attempt to sell the Products outside of the territory established, nor may sell these or any other medical products for any other entity **while this agreement is in force.**

*See id.* [D.E. 1–1 at ¶ 1.02] (emphasis added).

## II. *Alleged Conduct Subsequent to Execution of Distribution Agreement*

In its Verified Complaint, Medimport alleges that the following events transpired after the execution of the Distribution Agreement:

- Cabreja and Treve reported just one sale to Medimport and "repeatedly lamented worldwide financial woes, and their inability to procure additional sales for Medimport." *See* Verified Complaint [D.E. 1 at ¶¶ 23, 26].
- Medimport discovered that Cabreja and Treve engaged in multiple sales under the Halimed name which were not disclosed to Medimport. *See id.* [D.E. 1 at ¶ 39].
- Among the undisclosed sales was a sale to a customer based in Doral, Florida. *See id.* [D.E. 1 at ¶ 46].
- Without notifying Medimport, Cabreja established a limited liability company under the laws of Florida called Halimed Medical Equipment, LLC, naming himself and his wife, Raquel Cabreja, as the managing members. *See id.* [D.E. 1 at ¶¶ 35, 36].
- Halimed Medical Equipment, LLC later became Trevemed. *See id.* [D.E. 1 at ¶ 35].
- Due to her familial relationship with Cabreja and the principal of Medimport, Raquel Cabreja at all times was aware of Medimport, the Distribution Agreement, and Medimport's rights and ownership of the Halimed mark. *See id.* [D.E. 1 at ¶ 38].
- Raquel Cabreja as a manager of Trevemed interfered with the business relationship between Medimport, Cabreja and Treve by processing funds in furtherance of the scheme to defraud and circumvent Medimport. *See id.* [D.E. 1 at ¶ 135].
- On May 9, 2012, Cabreja sent an e-mail to Medimport stating that business could not thrive in the United States without considerable investment and that an unnamed Venezuelan individual was interested in making such an investment on the condition that Cabreja "directs the enterprise." *See id.* [D.E. 1 at ¶ 27].
- Cabreja further requested that Medimport transfer to him the Halimed name. *See id.* [D.E. 1 at ¶ 27].
- On May 10, 2012, Cabreja solicited one of Medimport's principals to invest $250,000.00 in the competing venture with the Venezuelan investor. *See id.* [D.E. 1 at ¶ 28].
- However, Medimport refused to convey to Cabreja the Halimed name, advised him to "refrain from using the brand, the Halimed web site, e-mail account, or any content, pictures or details in the Halimed catalogues," and demanded that Cabreja return the Halimed catalogues. *See id.* [D.E. 1 at ¶ 29].

## III. *Medimport's Claims*

Based on the foregoing salient allegations, Medimport asserts the following claims in its Verified Complaint:

Count 1: Federal Unfair Competition pursuant to the Lanham Act, Title 15,

United States Code, Section 1125(a) against all Defendants;

Count 2: Breach of Contract against Cabreja and Treve;

Count 3: Fraudulent Inducement against Cabreja and Treve;

Count 4: Misappropriation of Trade Secrets pursuant to Florida Statute, Section 688.001, *et seq.*, against Cabreja and Treve;

Count 5: Breach of Fiduciary Duty against Cabreja and Treve;

Count 6: Breach of Duty of Loyalty against Cabreja and Treve;

Count 7: Breach of Contract Implied in Law against Cabreja and Treve;

Count 8: Violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute, Section 501.201, *et seq.*, (hereafter "FDUTPA") against all Defendants;

Count 9: State Common Law Unfair Competition against all Defendants;

Count 10: Tortious Interference with Business Relationship against Raquel Cabreja and Trevemed; and

Count 11: Civil Conspiracy against all Defendants.

*See id.* [D.E. 1 at ¶¶ 65–144].

## IV. *Emergency Motion for Preliminary Injunction*

On June 19, 2012, Medimport filed an Emergency Motion for Preliminary Injunction [D.E. 4]. At an evidentiary hearing held on July 11, 2012, Medimport limited its request for preliminary injunctive relief to only three of its eleven claims, namely, the Federal Unfair Competition Claim (Count 1), the Breach of Contract Claim (Count 2), and the FDUTPA Claim (Count 8). On July 31, 2012, 2012 WL 3632580, the undersigned issued a Report and Recommendation recommending that the Court deny Medimport's request for a preliminary injunction [D.E. 23].

In the Report and Recommendation, the undersigned addressed as a preliminary matter Defendants' challenge to the Court's subject matter jurisdiction over Medimport's federal unfair competition claim, which is the sole federal claim in this action. *See* Report and Recommendation [D.E. 23 at 12–16]. Although Defendants argued that direct competition in U.S. commerce is required for Medimport to have standing to assert its federal unfair competition claim, the undersigned noted that, under Eleventh Circuit precedent, direct competition in the U.S. is not required and determined that Medimport satisfied the constitutional and prudential standing requirements for its federal claim. *See id.* [D.E. 23 at 13–16]. Furthermore, the undersigned found that even if such direct competition in the U.S. were required, such competition existed between Pascucci, as principal of Medimport (albeit through its representative, Cabreja), and Cabreja, on behalf of himself and his companies. *See id.* [D.E. 23 at 13].

Additionally, the undersigned determined that Medimport had met its burden of demonstrating a substantial likelihood of prevailing on the merits of its Lanham Act claim, but had failed to demonstrate a substantial threat of irreparable harm with respect to this claim because Defendants had stopped using the Halimed name to conduct business and Cabreja represented to Pascucci that such conduct would not continue. *See id.* [D.E. 23 at 19–21]. With respect to Medimport's breach of contract claim, the undersigned determined that, because Medimport was not a party to the Distribution Agreement, it lacked standing to invoke the benefits of the agreement. *See id.* [D.E. 23 at 21–23]. Hence, Medimport had failed to meet its burden of demonstrating a substantial likelihood of prevailing on the merits of its breach of contract claim. *See id.* [D.E. 23 at 21–22]. Finally, with respect to the

FDUTPA claim, the undersigned determined that Medimport had met its burden of demonstrating the likelihood of prevailing on the merits, but had failed to demonstrate a threat of irreparable injury because the allegedly deceptive conduct had ceased and Cabreja had represented that the conduct would not continue. *See id.* [D.E. 23 at 23–24]. On September 26, 2012, the Court adopted the Report and Recommendation [D.E. 34].

## V. *Motion to Dismiss*

On July 10, 2012, Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [D.E. 16]. With regard to Rule 12(b)(1), Defendants contend that the claims for breach of contract, fraudulent inducement, misappropriation of trade secrets, breaches of fiduciary duty and duty of loyalty, and tortious interference with business relationship asserted in Counts 2–6 and 10, respectively, should be dismissed because Medimport is not a party to the Distribution Agreement and therefore lacks prudential standing to bring these claims. *See* Motion to Dismiss [D.E. 16 at 3–4]. Additionally, in their Reply, Defendants argue that the Court lacks subject matter jurisdiction over this case because Medimport lacks standing to assert its Lanham Act claim. *See* Reply in Support of Motion to Dismiss [D.E. 27 at 1–5].[3]

With regard to Rule 12(b)(6), Defendants assert the following grounds for dismissal:

A. The claims for federal and state unfair competition, fraudulent inducement, breaches of fiduciary duty and duty of loyalty, violation of FDUTPA, and tortious interference with business relationship asserted in Counts 1, 3, 5, 6, 8, 9 and 10, respectively, are barred by the Florida's economic loss rule;

B. Counts 3 and 8 for fraudulent inducement and violation of FDUTPA, respectively, and the fraud allegations underlying Count 10 for tortious interference with business relationship have not been pled with the requisite particularity under Fed.R.Civ.P. 9(b);

C. Counts 5 and 6 for breaches of fiduciary duty and duty of loyalty fail to state a claim because the Distribution Agreement does not create a partnership or a master-servant relationship between its parties;

D. Counts 1 and 9 for federal and state unfair competition do not state claims against Defendants because Defendants are not competitors of Medimport;

E. Count 10 for tortious interference does not allege any protectable business relationship with which Defendants intentionally interfered;

F. Count 7 for contract implied in law fails because the Distribution Agreement nullifies the allegations of this count;

G. Count 8 fails because a mere breach of contract does not support a cause of action under FDUTPA;

H. As to Count 4, Medimport has not met its burden of alleging protectable trade secrets or that Defendants misappropriated protectable secrets; and

I. Count 11 for civil conspiracy fails to allege an underlying cause of action

---

**3.** As previously noted, the Lanham Act claim asserted in Count 1 is the sole federal claim in this case. All of the other claims are predicated on state law and are before the Court on the basis of supplemental jurisdiction pursuant to Title 28, United States Code, Section 1367.

and therefore fails to state a claim for which relief may be granted. *See* Motion to Dismiss [D.E. 16 at 1, 4–16]. Defendants also contend that Medimport has not made sufficient factual allegations to support piercing the corporate veil of Treve Investments, LLC and Trevemed, LLC as to their officers and directors, namely, Cabreja and Raquel Cabreja. *See* Motion to Dismiss [D.E. 16 at 16]. In its Response, Medimport argued that (1) it has prudential standing to bring Counts 2–6 and 10; (2) the economic loss rule does not bar Counts 1, 3, 5, 6, 8, 9 and 10; (3) Count 3 meets Rule 9(b) standards and Counts 8 and 10 are not subject to it; and (4) its Verified Complaint otherwise sufficiently states all of the claims asserted therein. *See* Response in Opposition to Motion to Dismiss [D.E. 24 at 1–14].

On October 25, 2012, the undersigned held a hearing on Defendants' Motion to Dismiss. At the conclusion of the hearing, the parties were directed to file supplemental briefs on (1) the application of the economic loss rule to Plaintiffs federal and state unfair competition claims, Plaintiff's implied contract claim, and non-parties to a contract; and (2) the viability of a claim against an LLC's managing member without piercing the corporate veil. *See* Order Directing Supplemental Briefs [D.E. 37]. Accordingly, on November 8, 2012, Defendants filed their supplemental brief [D.E. 39] and on November 21, 2012, Medimport filed its response to the supplement [D.E. 43].

### STANDARD OF REVIEW

#### I. *Standing/Fed.R.Civ.P. 12(b)(1)*

■ A motion to dismiss under Rule 12(b)(1) "challenges the district court's subject matter jurisdiction." *See Rodriguez–Rivera v. United States*, No. 8:12–cv–856–T–30TBM, 2012 WL 5266061, at \*3 (M.D.Fla. Oct. 24, 2012). "Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." *Hannes v. Conference on Jewish Material Claims against Germany, Inc.*, No. 11–80719–CIV, 2012 WL 3814254, at \*3 (S.D.Fla. Sept. 4, 2012) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n. 8 (11th Cir.1993)).

#### II. *Failure to State a Claim/Fed. R. Civ. P. 12(b)(6)*

In considering a motion to dismiss under 12(b)(6), "the Court must view the complaint in the light most favorable to the plaintiff." *Bruce v. Gregory*, No. 5:09–cv–433–Oc–10PRL, 2012 WL 5907058, at \*1 (M.D.Fla. Nov. 26, 2012) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). Hence, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bruce*, 2012 WL 5907058, at \*1 (citing *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). "Ordinarily, a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Blair v. Wachovia Mortg. Corp*, No. 5:11–cv–566–Oc–37TBS, 2012 WL 868878, at \*2 (M.D.Fla. Mar. 14, 2012) (citing Fed.R.Civ.P. 8(a)(2)). Although "[d]etailed factual allegations are not required, [ ] a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" will not suffice. *Blair*, 2012 WL 868878, at \*2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bruce*, 2012 WL 5907058, at \*1 (citing

*Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955). Thus, in order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Blair,* 2012 WL 868878, at *2 (citing *Ashcroft,* 556 U.S. at 662, 129 S.Ct. 1937; *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## DISCUSSION

### I. *Standing/Fed.R.Civ.P. 12(b)(1)*

As noted above, Defendants argued in their Reply that the Court lacks original jurisdiction to hear this case because the Verified Complaint fails to state a claim in Count 1 under the Lanham Act, which is the sole federal claim in this action. *See* Reply in Support of Motion to Dismiss [D.E. 27 at 1–5]. Defendants also contend that Count 2 (Breach of Contract), Count 3 (Fraudulent Inducement), Count 4 (Misappropriation of Trade Secrets), Count 5 (Breach of Fiduciary Duty), Count 6 (Breach of Duty of Loyalty) and Count 10 (Tortious Interference with Business Relationship) should be dismissed because Medimport is not a party to the Distribution Agreement, hence Medimport lacks prudential standing to bring these claims. *See* Motion to Dismiss [D.E. 16 at 3].

### a. *Count 1—Lanham Act Claim*

■ Defendants argue that the Lanham Act does not confer a right on foreign corporations to enforce a trademark absent its use in the United States. *See* Reply in Support of Motion to Dismiss [D.E. 27 at 1–5]. However, the Distribution Agreement grants Cabreja and Treve exclusive rights to promote and sell Halimed products in the United States. *See* Distribution Agreement [D.E. 1–1 at ¶¶ (1), 1.01]. Furthermore, the Verified Complaint alleges that Cabreja made a sale under the Halimed name to a customer based in Doral, Florida. *See* Verified Complaint [D.E. 1 at ¶¶ 39, 46]. Therefore, Medimport has alleged sufficient facts to satisfy the requirement of use of the Halimed mark in the United States.

■ Defendants also challenge Medimport's constitutional and prudential standing with respect to the Lanham Act claim. As explained by the Eleventh Circuit in *Phoenix of Broward, Inc. v. McDonald's Corp.,* 489 F.3d 1156, 1161 (11th Cir.2007), a party bringing a federal action must establish standing, which is "comprised of two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Phoenix,* 489 F.3d at 1161. Because the issue of Article III standing is jurisdictional, it "should be addressed before issues of prudential and statutory standing." *Id.* (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 91–93, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

■ In order to show Article III standing, a plaintiff must allege that "(1) he has suffered an actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable ruling." *Phoenix,* 489 F.3d at 1161 (citing *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,* 450 F.3d 1295, 1304 (11th Cir. 2006)). In its Verified Complaint, Medimport alleges: that Defendants' unauthorized sale of medical products using the Halimed name constitutes a false designation of origin, a false description of Defendants' goods, and a false representation that Defendants' goods are affiliated with Medimport; that Defendants' conduct is likely to cause confusion or mistake causing damage and injury to Medimport; and that, as relief, Medimport seeks *inter alia*

profits, damages, and costs. *See* Verified Complaint [D.E. 1 at ¶¶ 69, 71, 75]. Thus, Medimport alleges that it suffered an actual injury that is fairly traceable to Defendants' alleged misconduct, and if granted, the relief sought would redress such injury. Therefore, based on the allegations in the Verified Complaint, Medimport has satisfied the requirements of constitutional standing.

■ As noted above, however, even where the plaintiff demonstrates constitutional standing, prudential considerations can preclude standing. In *Phoenix of Broward, Inc. v. McDonald's Corp.*, the Eleventh Circuit adopted the test for determining prudential standing under the Lanham Act articulated in *Conte Bros. Auto., Inc. v. Quaker State–Slick 50, Inc.*, 165 F.3d 221, 233 (3d Cir.1998). *See Phoenix*, 489 F.3d at 1163–64.[4] Under the *Conte Brothers* test, a court weighs the following factors in determining whether a party has prudential standing:

(1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the Lanham Act?

(2) The directness or indirectness of the asserted injury.

(3) The proximity or remoteness of the party to the alleged injurious conduct.

(4) The speculativeness of the damages claim.

(5) The risk of duplicative damages or complexity in apportioning damages.

*Phoenix*, 489 F.3d at 1163–64.

■ Upon consideration of the *Phoenix/Conte Brothers* factors, the undersigned concludes that Medimport has prudential standing. With respect to the first factor, the nature of the plaintiffs alleged injury, a key concern of the Lanham Act "is to protect against misappropriation of the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging, which would otherwise create an impression that the products [or services] of the defendant originated with the plaintiff." *Rosenthal*, 2009 WL 1812743, at *5. In its Verified Complaint, Medimport alleges that Defendants sold medical products using the identical Halimed name without authorization, thereby constituting a false representation that Defendants' goods are affiliated with Medimport. *See* Verified Complaint [D.E. 1 at ¶ 69]. Therefore, Medimport's claimed injury is of the type the Lanham Act is designed to address and this factor weighs in favor of finding prudential standing.

■ The remaining four factors also weigh in favor of finding prudential standing. With respect to the second factor, the directness of the asserted injury, given Medimport's status as the alleged owner of the Halimed mark, Medimport has the right and duty to safeguard its interest in the mark and has a direct interest in ensuring that the mark is not used to mislead consumers. In examining the third factor, the undersigned must determine whether there is "someone who has a greater interest than the plaintiff to advance the lawsuit and thereby vindicate the public interest." *Rosenthal*, 2009 WL 1812743, at *6 (citing *Phoenix*, 489 F.3d at 1170). No entity has a greater interest than Medimport, as the alleged owner of the Halimed mark, to bring suit and thereby vindicate

---

4. This test is applicable to both a false advertising claim, which was at issue in *Phoenix*, and the likelihood of confusion claim asserted by Medimport. *See Phoenix*, 489 F.3d at 1163; *Trump Plaza v. Rosenthal*, No. 08– 80408–CIV, 2009 WL 1812743, at *4 & n. 10 (S.D.Fla. June 24, 2009) (finding it appropriate to apply the prudential standing considerations for a false advertising claim to a likelihood of confusion claim).

the public interest in this case. The fourth factor requires a "causal link between the alleged misconduct and resulting harm." *Rosenthal,* 2009 WL 1812743, at *7. Here, Medimport claims, *inter alia,* that it has sustained damages as a result of Defendants' unauthorized use of the Halimed mark. Finally, "[c]ourts applying th[e] fifth factor have examined the number of potential claimants in the same position as the plaintiff." *Rosenthal,* 2009 WL 1812743, at *8 (citing *Phoenix,* 489 F.3d at 1172). Because Medimport is the sole alleged owner of the Halimed mark, there is no risk of duplicative damages.

Having determined that Medimport has standing with regard to the Lanham Act claim, the undersigned respectfully recommends that Defendants' Motion to Dismiss Count 1 pursuant to Fed.R.Civ.P. 12(b)(1) be denied.[5]

### b. Counts 2–6 & 10

As noted above, Defendants argue that Count 2 (Breach of Contract), Count 3 (Fraudulent Inducement), Count 4 (Misappropriation of Trade Secrets), Count 5 (Breach of Fiduciary Duty), Count 6 (Breach of Duty of Loyalty) and Count 10 (Tortious Interference with Business Relationship) should be dismissed because Medimport is not a party to the Distribution Agreement, hence lacks prudential standing to bring these claims. *See* Motion to Dismiss [D.E. 16 at 3].

### i. Count 2 (Breach of Contract)

In Count 2 of the Verified Complaint, Medimport brings a claim for breach of contract against Cabreja and Treve, averring that "Cabreja and Treve are both parties to the [Distribution] Agreement along with Medimport." *See* Verified Complaint [D.E. 1 at ¶ 77]. However, the Distribution Agreement states that the contract is between Pascucci as the legal representative and owner of the Halimed Medical Products brand as the Principal and Cabreja on behalf of Treve as the Distributor. *See* Distribution Agreement [D.E. 1–1 ¶ (1) ]. Indeed, Medimport is not mentioned anywhere in the Distribution Agreement. *Id.* Therefore, the Court has no duty to accept as true Medimport's conclusory allegation that it is a party to the Distribution Agreement. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir.2007) (A court's "duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). *See also Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir.1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."). Further, Medimport has failed to allege any basis upon which it may otherwise invoke the benefits of a contract to which it is not a party. *See Galstaldi v. Sunvest Cmts., USA, LLC,* 637 F.Supp.2d 1045, 1055 (S.D.Fla. 2009) ("As the Eleventh Circuit has noted, there is a general rule that a non-party to a contract may not invoke the contract.") (citing *In re Humana Inc. Managed Care Litig.,* 285 F.3d 971, 973 (11th Cir.2002)). Because Medimport is not a party to the Distribution Agreement, it lacks standing

---

5. Given the existence of federal subject matter jurisdiction, the Court may exercise supplemental jurisdiction over the state law claims asserted in Counts 2 through 11. *See* 28 U.S.C. § 1367.

to assert a claim for breach of that agreement. Therefore, the undersigned respectfully recommends that Count 2 be dismissed without prejudice to give Medimport an opportunity to make additional allegations that would support a claim for breach of the Distribution Agreement, if it can.

### ii. Count 3 (Fraudulent Inducement)

 In Count 3 of the Verified Complaint, Medimport brings a claim for fraudulent inducement against Cabreja and Treve, averring that they made various misrepresentations to Medimport "prior to executing the [Distribution] Agreement with Medimport." *See* Verified Complaint [D.E. 1 at ¶ 85]. Under Florida law, a fraudulent inducement claim requires proof of the following elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1315 (11th Cir.1998) (citing *Johnson v. Davis,* 480 So.2d 625, 627 (Fla. 1985)). "The plaintiffs reliance must be 'justifiable.' " *Id.* (citing *Saunders Leasing Sys., Inc. v. Gulf Cent. Distrib. Ctr., Inc.,* 513 So.2d 1303, 1306 (Fla. 2d DCA 1987)). Here, the reliance element alleged by Medimport is that it entered into the Distribution Agreement. *See* Verified Complaint [D.E. 1 at ¶ 85]. However, as determined above, Medimport is not a party to the Distribution Agreement. Therefore, Medimport lacks standing to assert a claim for fraudulent inducement to enter into that agreement. Accordingly, the undersigned respectfully recommends that Count 3 be dismissed without prejudice to assert a proper claim for fraudulent inducement, if it can.

### iii. Counts 4 (Misappropriation of Trade Secrets), 5 (Breach of Fiduciary Duty), 6 (Breach of Duty of Loyalty) and 10 (Tortious Interference with Business Relationship)

In opposition to Defendants' Motion to Dismiss, Medimport contends that these claims are not necessarily predicated on the Distribution Agreement. *See* Response in Opposition to Motion to Dismiss [D.E. 24 at 13–14]. However, as currently pled, Counts 4, 5, 6 and 10 are not clearly independent of the breach of contract claim. For example, in Count 4, Medimport alleges that it protects its trade secrets by, among other things, using "confidentiality clauses, like that of the [Distribution] Agreement with Cabreja and Treve." *See* Verified Complaint [D.E. 1 at ¶ 94]. In Counts 5 and 6, Medimport alleges that it formed a contractual relationship with Cabreja and Treve in support of its claim that the latter owed it a fiduciary duty and a duty of loyalty. *See id* [D.E. 1 at ¶¶ 101, 108]. Finally, in Count 10, Medimport alleges that Trevemed does business with Treve and Cabreja despite the latter's "exclusivity contract with Medimport." *Id.* [D.E. 1 at 1136].

Given the foregoing, the undersigned respectfully recommends that Counts 4, 5, 6 and 10 be dismissed without prejudice to give Medimport an opportunity to replead these counts more clearly in terms of whether they are predicated on the Distribution Agreement (if Medimport repleads Count 2) or on other grounds.

## II. Failure to State a Claim/Fed. R. Civ. P. 12(b)(6)

### A. Economic Loss Rule

Defendants argue that Count 1 (Federal Unfair Competition), Count 3 (Fraudulent Inducement), Count 5 (Breach of Fiduciary Duty), Count 6 (Breach of Duty of Loyalty), Count 8 (FDUTPA), Count 9 (State Unfair Competition) and Count 10 (Tortious Interference) are barred by Florida's

economic loss rule. *See* Motion to Dismiss [D.E. 16 at 4]. As noted above, the parties have filed supplemental briefs on this issue, addressing the application of the economic loss rule to Medimport's federal and state unfair competition claims, its implied contract claim, and non-parties to a contract. Defendants' Supplemental Brief [D.E. 39 at 1–7]; Plaintiff's Responsive Supplemental Brief [D.E. 43 at 1–7].

### a. Application of the economic loss rule to Medimport's federal and state unfair competition claims

It is well-established that Florida's economic loss rule does not bar intentional torts. *Treco Int'l S.A. v. Kromka*, 706 F.Supp.2d 1283, 1289–90 (S.D.Fla. 2010) (citing *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So.2d 532, 543 n. 3 (Fla. 2004) ("Intentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent generally remain viable either in the products liability context or if the parties are in privity of contract."). Trademark infringement and unfair competition are intentional torts. *Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09–22285–CIV, 2010 WL 3452341, at *5 (S.D.Fla. Sept. 1, 2010)). Therefore, contrary to Defendants' contention, Florida's economic rule does not bar Medimport's unfair competition claims.

In this regard, Defendants' reliance on *Samson Lift Techs., LLC v. Jerr–Dan. Corp.*, Civ. No. 09–1590, 2010 WL 1052932, at *7 (M.D.Pa. Mar. 22, 2010) is misplaced. In *Samson*, the court considered Florida's, Pennsylvania's and New York's versions of the economic loss doctrine, found them to be similar and dismissed an unfair competition claim as barred by the doctrine. *Id.* However, the *Samson* court wholly failed to take into consideration the exception for intentional torts in Florida's economic loss rule. *Id.*

Therefore, the undersigned finds no merit in Defendants' argument that Florida's economic loss rule bars Medimport's claims for federal and state unfair competition asserted in Counts 1 and 9 of the Verified Complaint.[6]

### b. Application of the economic loss rule to Medimport's implied contract claim

Defendants rely on *Standard Fish Co., Ltd. v. 7337 Douglas Enterprises, Inc.*, 673 So.2d 503, 504 (Fla.3d DCA 1996) for the proposition that Florida's economic loss rule is applicable to contracts implied in law even absent an express contract. In *Standard Fish*, plaintiff alleged both an express contract and an implied contract and the court affirmed the dismissal of an additional tort claim, stating:

> Once again, we are confronted with the oftentimes acrimonious debate over whether contract law is more appropriate than tort law in resolving a legal dispute. Once again, we reiterate that where a plaintiff seeks purely economic losses, defined as "damages for inadequate value, cost of repair and replacement of the defective product, or consequent loss of profits-without any claim for personal injury or damage to their property," the plaintiffs recovery is limited to contractual remedies.

*Id.* Based on this general language and the existence of an express contract, it cannot be said that the court in *Standard Fish* applied the economic loss rule to the implied contract.

By contrast in *Jones v. Childers*, 18 F.3d 899 (11th Cir.1994), where only an implied contract was alleged, the Eleventh

---

**6.** The foregoing analysis is equally applicable to the claims for fraudulent inducement, FDUTPA and tortious interference asserted in Counts 3, 8 and 10, respectively, since they are also intentional torts. *Indem. Ins. Co.*, 891 So.2d at 543 n. 3.

Circuit rejected defendant's contention "that an implied contract will bar a plaintiff's tort claims where no express contract governs relations between two parties," adding that, "[a]s presently constituted, Florida's economic loss doctrine does not bar the Joneses' tort claims against Childers." *Id.* at 905.

Given the absence of legal support for Defendants' contention that Medimport's implied contract claim bars its tort claims, the undersigned finds no merit in this argument.

### c. *Application of the economic loss rule to non-parties to a contract*

▮▮▮▮ Florida's economic loss rule requires contractual privity. *Luigino's Int'l, Inc. v. Miller,* 311 Fed.Appx. 289, 293 (11th Cir.2009) ("The Supreme Court of Florida has expressly limited the economic loss rule to situations where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies.") (citing *Indem. Ins. Co.,* 891 So.2d at 534).[7] As determined above, Medimport is not a party to the Distribution Agreement. In the absence of an express contract to which Medimport is a party, and given that this is not a products liability case, Medimport's tort claims are not barred by the economic loss rule.[8]

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion to Dismiss Counts 1, 3, 5, 6, 8, 9

and 10 on the basis of the Florida's economic loss rule be denied.

### B. *Requisite Particularity*

▮▮▮▮ Defendants argue that Count 3 (Fraudulent Inducement), Count 8 (FDUTPA) and 10 (Tortious Interference with Business Relationship) have not been pled with sufficient particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). *See* Motion to Dismiss [D.E. 16 at 5–7]. Rule 9(b) states as follows, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "Where a complaint contains averments of fraud or mistake ... [Rule 9(b) ] imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity." *Blair,* 2012 WL 868878, at *2 (citing *Brooks v. Blue Cross & Blue Shield of Fla.,* 116 F.3d 1364, 1381 (11th Cir.1997)). "This particularity requirement is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Blair,* 2012 WL 868878, at *2 (citing *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.,* 671 F.3d 1217, 1222–23 (11th Cir.2012); *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1324 (11th Cir.2009)). Furthermore, "the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Blair,* 2012

---

**7.** The recognized exceptions are for professional malpractice, fraudulent inducement, negligent misrepresentation and freestanding statutory causes of action. *Indem. Ins. Co.,* 891 So.2d at 543.

**8.** Should Medimport reassert its claim for breach of the Distribution Agreement, then the contractual privity requirement would be met and the economic loss rule would bar non-intentional tort claims against the parties

to that contract unless a recognized exception applies. *Indem. Ins. Co.,* 891 So.2d at 543. Further, in that event, tort claims against officers of such parties may also be barred. *See Luigino's,* 311 Fed.Appx. at 294 ("We recognize that contractual privity may not be required when a tort action is barred against a corporation under the economic loss rule and its corporate employee is being sued for the same tortious conduct.").

WL 868878, at *2 (citing *Brooks,* 116 F.3d at 1381; *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992)).

### a. Count 3 (Fraudulent Inducement)

 In Count 3, Medimport alleges that Cabreja and Treve fraudulently induced it to enter into the Distribution Agreement. *See* Verified Complaint [D.E. 1 at 11–12]. Initially, the undersigned has recommended that this Count be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing. Because the recommendation is that the dismissal be without prejudice, the undersigned addresses the sufficiency of Medimport's fraud allegations. Medimport alleges (1) that the fraudulent conduct took place "in the weeks leading up to the execution of the [Distribution] Agreement;" (2) that "a substantial part of the events or omissions giving rise to the claims ... occurred in this judicial district;" (3) and that Cabreja and Treve, while intending to "misappropriate Medimport's brand, trademark, confidential logistical and supplier information and circumvent Medimport and their obligations in the [Distribution] Agreement ... [,] represented that they would act as agents of Medimport, and would keep confidential Medimport's supplier, logistical, and other confidential information." Verified Complaint [D.E. 1 at ¶¶ 10, 85, 86, 89]. These factual allegations are sufficient "as to time, place, and substance of the defendant's alleged fraud, [and] specifically [as to] the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Blair,* 2012 WL 868878, at *2. Therefore, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss with respect to Count 3 on this ground.

### b. Count 8 (FDUTPA) [9]

 In order to prevail under a claim for violation of FDUTPA, a plaintiff must establish the following: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Blair,* 2012 WL 868878, at *2. In Count 8, Medimport alleges that (1) "Treve and Cabreja usurped corporate opportunities (e.g., sales) and concealed the sales;" (2) "Trevemed, upon information and belief, interposed itself as Halimed (Medimport), thereby deceiving Medimport's suppliers, customers, and the consuming public;" and (3) "Raquel Cabreja, having knowledge of the contractual relationship among Medimport, Treve and Cabreja, intentionally managed Trevemed in a manner that was deceptive, in keeping with Trevemed's part in circumventing Medimport and unfairly competing with it." Verified Complaint [D.E. 1 at 15]. The undersigned finds that Medimport has satisfied the particularity requirement of Rule 9(b) in that the complaint alleged (1) that the deceptive conduct took place during a time subsequent to the execution of the Distribution Agreement on November 16, 2009, (2) that the deceptive conduct took place in this judicial district, (3) and that Defendants took part in conducting business under the Halimed name without authorization to the detriment of Medimport. *See* Verified Complaint [D.E. 1 at 2, 4–8, 15]. Therefore, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss with respect to Count 8 on this ground.

### c. Count 10 (Tortious Interference with Business Relationship) [10]

 In Count 10, Medimport alleges that Raquel Cabreja and Trevemed,

---

9. Medimport contends that Rule 9(b) is not applicable to its FDUTPA claim. *See* Response in Opposition to Motion to Dismiss [D.E. 24 at 8–9]. Because the undersigned

concludes that the claim satisfies Rule 9(b), this argument need not be considered.

10. Although Rule 9(b) does not apply to a tortious interference claim, it does apply to

through their fraudulent conduct, tortiously interfered with the business relationship which existed among Medimport, Cabreja, and Treve. *See* Verified Complaint [D.E. 1 at 2, 4–8, 16]. Specifically, Medimport alleges that Trevemed interfered with that business relationship by serving as an impostor for Medimport using the Halimed trademark. *See id.* [D.E. 1 at 16]. Further, Medimport alleges that Raquel Cabreja interfered with the business relationship between Medimport, Cabreja and Treve by processing funds in furtherance of the scheme to defraud and circumvent Medimport as a manager of Trevemed. *See id.* [D.E. 1 at 16]. The undersigned finds that Medimport satisfied the particularity requirement of Rule 9(b) in that the complaint alleges that the fraudulent conduct underlying this claim took place in this judicial district during a time subsequent to the execution of the Distribution Agreement on November 16, 2009, and that Trevemed and Raquel Cabreja took part in interfering with the alleged business relationship between Medimport, Cabreja and Treve by serving as an impostor for Medimport and processing funds in furtherance of the scheme to defraud Medimport. Therefore, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss with respect to Count 10 on this ground.

### C. *Partnership/Master–Servant Relationship*

Defendants argue that Count 5 (Breach of Fiduciary Duty) and Count 6 (Breach of Duty of Loyalty) fail to state claims because the Distribution Agreement does not create a partnership or a master-servant relationship between the parties. *See* Motion to Dismiss [D.E. 16 at 7]. Therefore, Defendants contend that, by the terms of

the Distribution Agreement, Cabreja and Treve do not owe Medimport a fiduciary duty or a duty of loyalty. *See id.* [D.E. 16 at 7]. As noted above in connection with Defendants' standing arguments under Rule 12(b)(1), Medimport contends that its claims for breach of fiduciary duty and duty of loyalty are not necessarily predicated on the Distribution Agreement. However, as also noted above, both claims reference the Distribution Agreement as a source of these duties. *See* Verified Complaint [D.E. 1 at ¶¶ 101, 108]. Therefore, the undersigned respectfully recommends that these counts be dismissed without prejudice to give Medimport an opportunity to replead them independently of the breach of contract claim, or to plead them more clearly in terms of whether they are predicated on the Distribution Agreement (if Medimport repleads Count 2) or on other grounds.

### D. *Non–Competition*

 Defendants also argue that Counts 1 (Federal Unfair Competition) and 9 (Common Law Unfair Competition) do not state claims against Defendants, because Defendants are not competitors of Medimport. *See* Motion to Dismiss [D.E. 16 at 8]. Contrary to Defendants' contention, however, the allegations in the Verified Complaint support the inference that Defendants were competitors of Medimport. On the one hand, as a representative of Halimed, Cabreja was authorized to promote and sell Halimed Medical Products for the benefit of Medimport's principal, Pascucci. However, at the same time, Cabreja was using the Halimed mark to make sales for his own benefit. Therefore, competition is alleged between Pascucci, as principal of Medimport (albeit through its representative, Cabreja), and Cabreja, on

---

fraud allegations underlying such a claim. Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

behalf of himself and his companies. Hence, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss with respect to Count 1 and 9 on this ground.

### E. *Protectable Business Relationship*

■ In Count 10, Medimport asserts a claim for intentional interference with business relationship against Raquel Cabreja and Trevemed. *See* Verified Complaint [D.E. 1 at 16]. According to Defendants, "[t]here is no cause of action for interference with business relationship based on contract when defendant was the other party to that contract … and an agent of a corporate party to a contract cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship." *See* Motion to Dismiss [D.E. 16 at 12] (citing *Mitchell v. Sch. Bd. of Dade Cnty.*, 566 So.2d 2 (Fla. 3d DCA 1990); *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992)). Defendants argue that this principle applies here because Raquel Cabreja and Trevemed are not strangers to the business relationship between Cabreja, Treve and Pascucci due to the marital relationship between Cabreja and Raquel Cabreja and their positions as managing members of Trevemed. *See* Motion to Dismiss [D.E. 16 at 12]. However, these facts do not render Raquel Cabreja and Trevemed parties or agents of parties to the Distribution Agreement. As previously noted, the Distribution Agreement was between Treve, through its director, Cabreja and Filippo Pascucci, as the "legal representative and owner of the Halimed Medical Products brand." [D.E. 1–1 at ¶ (1) ]. Therefore, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss with respect to Count 10 on this ground.

### F. *Nullification of Quasi–Contract Claim by Distribution Agreement*

■ Defendants argue that Count 7 (Breach of Contract Implied in Law) fails because the Distribution Agreement nullifies the allegations in this Count. *See* Motion to Dismiss [D.E. 16 at 13]. According to Defendants, when an express contract exists, the law will not recognize an implied contract. *See id.* [D.E. 16 at 13]. In response, Medimport argues that it may plead a contract claim and an alternative implied contract claim pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure. *See* Response in Opposition to Motion to Dismiss [D.E. 24 at 1]. Indeed, Rule 8(d)(2) "specifically permits the pleading of express contract and implied contract (or quantum meruit) claims as alternative theories for relief, although recovery on only one such theory is ultimately allowed." *Webster Indus., Inc. v. Northwood Doors, Inc.*, 234 F.Supp.2d 981, 994 (N.D.Iowa 2002). Because Medimport is permitted to plead its implied contract claim in the alternative, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss Count 7 on this ground.

### G. FDUTPA

Defendants argue that Count 8 for violation of FDUTPA fails because a mere breach of contract claim does not support a cause of action under FDUTPA. *See* Motion to Dismiss [D.E. 16 at 14]. As noted above, the elements of a FDUTPA claim are: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Blair*, 2012 WL 868878, at *2. In its Verified Complaint, Medimport alleges that "Treve and Cabreja usurped corporate opportunities (e.g., sales) and concealed sales from Medimport," that Trevemed "interposed itself as Halimed

(Medimport) thereby deceiving Medimport's suppliers, customers, and the consuming public," and that "Raquel Cabreja, having knowledge of the contractual relationship among Medimport, Treve and Cabreja, intentionally managed Trevemed in a manner that was deceptive, in keeping with Trevemed's part in circumventing Medimport and unfairly competing with it." *See* Verified Complaint [D.E. 1 at 15]. Thus, as pled in the Verified Complaint, Medimport's FDUTPA claim is not merely based upon breach of contract. Therefore, the undersigned respectfully recommends that the Court deny Medimport's Motion to Dismiss Count 8 on this ground.

### H. *Protectable Trade Secrets*

▮▮▮ Defendants argue that Count 4 (Misappropriation of Trade Secrets) fails because Medimport has not met its burden of alleging protectable trade secrets or alleging that Cabreja and Treve misappropriated protectable trade secrets. *See* Motion to Dismiss [D.E. 16 at 15]. The elements of a claim for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq* are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271, 1290 (S.D.Fla.2001). "To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Id.*

▮▮▮ In Count 4, Medimport alleges that it "expended considerable resources to develop logistics and identify key suppliers, which is crucial to its operations in targeted industries;" that "Medimport

makes reasonable efforts to maintain the secrecy of its trade secrets"; that "Cabreja and Treve, through their association and agency for Medimport, were respectively provided with variable amounts of access to Medimport's trade secrets, including the identity of its suppliers and logistics;" and that "Treve and Cabreja are attempting to utilize Medimport's misappropriated trade secrets to gain a commercial advantage in direct competition with Medimport." *See* Verified Complaint [D.E. 1 at 12]. Therefore, the undersigned finds that Medimport has sufficiently alleged the existence of protectable trade secrets and that Cabreja and Treve misappropriated those trade secrets. Hence, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss Count 4 on this ground.

### I. *Underlying Cause of Action for Conspiracy*

▮▮▮ "Civil conspiracy is not an independent cause of action; it is a liability spreading device based upon viable underlying causes of action." *In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1286 (S.D.Fla.2003). Defendants argue that Count 11 (Civil Conspiracy) fails to state a claim because the underlying causes of action asserted in Counts 1 and 4–8 are all subject to dismissal. *See* Motion to Dismiss [D.E. 16 at 16]. However, the undersigned is recommending herein that Defendants' Motion to Dismiss be denied with respect to Counts 1, 4, 7 and 8. Therefore, the undersigned also respectfully recommends that the Court deny Defendants' Motion to Dismiss Count 11.

### III. *Piercing the Corporate Veil*

In their Supplemental Brief, Defendants argue that Medimport's conclusory statements and mere allegation that Raquel Cabreja is a managing member of Tre-

vemed, LLC are insufficient to pierce the corporate veil and state a claim against her as an individual. *See* Supplemental Brief [D.E. 39 at 7]. Further, Defendants argue that Medimport has the burden to allege well-pleaded facts showing that Raquel Cabreja fraudulently used the company form before disregarding the entity, and in particular, Medimport needs to show that Trevemed is a sham and exists for no other purpose than as a vehicle for fraud. *See id.* [D.E. 39 at 8]. In response, Medimport contends that it is not required to pierce the corporate veil because it is alleging intentional torts committed by Raquel Cabreja. *See* Plaintiff's Responsive Supplemental Brief [D.E. 43 at 7–8] (citing *Fla. Specialty, Inc. v. H 2 Ology, Inc.*, 742 So.2d 523, 527 (Fla. 1st DCA 1999)).

The claims asserted against Raquel Cabreja in the Verified Complaint are: Federal Unfair Competition (Count 1); Violation of FDUTPA (Count 8); State Common Law Unfair Competition (Count 9); Tortious Interference with Business Relationship (Count 10); and Civil Conspiracy (Count 11). The allegations regarding Raquel Cabreja's conduct are:

- That she was aware of the Distribution Agreement and Medimport's rights and ownership of the Halimed Mark. *See* Verified Complaint General Allegations [D.E. 1 at ¶ 38].
- That, having knowledge of the Distribution Agreement, she intentionally managed Trevemed in a manner that was deceptive, in keeping with Trevemed's part in circumventing Medimport and unfairly competing with it. *See* Verified Complaint Count 8 Allegations [D.E. 1 at ¶ 126].
- That, having knowledge of the business relationship among Medimport, Cabreja and Treve, she intentionally interfered with that relationship and Trevemed, under her management, processed funds in furtherance of the

scheme to defraud and circumvent Medimport. *See* Verified Complaint Count 10 Allegations [D.E. 1 at ¶ 135].

Viewing these allegations in the light most favorable to Medimport, the undersigned concludes that Medimport has alleged sufficient facts to support its claims against Raquel Cabreja based on her conduct as to Counts 8 and 10 and the Civil Conspiracy claim to the extent it is predicated on Count 8. However, the factual allegations are insufficient to support the unfair competition claims in Counts 1 and 9. Therefore, the undersigned respectfully recommends that the Court dismiss without prejudice Counts 1 and 9 as to Raquel Cabreja.

### RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that Defendants' Motion to Dismiss [D.E. 16] be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Counts 2, 3, 4, 5, 6 and 10 be DISMISSED without prejudice.

2. Counts 1 and 9 be DISMISSED without prejudice as to Raquel Cabreja.

3. The Motion to Dismiss be otherwise DENIED.

4. Plaintiff be GRANTED leave to file an amended pleading that comports with this Report and Recommendation.

The parties have ***fourteen (14) days*** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. *See* Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See Resolution Trust Corp.*

*v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).