Douglas BEHRMAN, Plaintiff,

v.

ALLSTATE LIFE INSURANCE COMPANY, Allstate Distributors, LLC, Transamerica Occidental Life Insurance Company, Transamerica Securities Sales Corporation, Transamerica Financial Advisors, Inc., and AFSG Securities Corporation, Defendants.

No. 04–60926CIV.

United States District Court,
S.D. Florida.

Sept. 7, 2005.

Pat Huddleston, II, Huddleston & Nohr, Marietta, GA, for Plaintiff.

Russell Cornelius Weigel, III, Carlton Fields, Miami, FL, Debra Anne Jenks,

Dobin & Jenks, Jupiter, FL, Anthony Harris Pelle, for Defendants.

## *ORDER GRANTING TRANSAMERICA DEFENDANTS' SECOND MOTION TO DISMISS AND GRANTING ALLSTATE DEFENDANTS' SECOND MOTION TO DISMISS*

SEITZ, District Judge.

THIS MATTER is before the Court on the Motions to Dismiss Plaintiff's First Amended Complaint filed by Defendants Transamerica Occidental Life Insurance Company and Transamerica Securities Sales Corporation (collectively, the "Transamerica Defendants") [DE–42] and Defendants Allstate Life Insurance Company and Allstate Distributors, Inc. (collectively, the "Allstate Defendants") [DE–43]. On March 23, 2005, this Court granted both Defendants'[1] motions to dismiss Plaintiff's original complaint (the "March 23rd Order"), Counts I–VI and IX–XII being dismissed without prejudice.[2] Plaintiff filed an amended complaint on April 5, 2005 [DE–38]. The amended complaint alleges very similar counts as those in the original complaint: negligent hiring, training and supervision (Counts I–II), negligent misrepresentation and omission (Counts III–IV), common law fraud in the inducement (Counts V–VI), and breach of contract (Counts VII–VIII). The amended complaint also adds two new counts of civil conspiracy (Counts IX–X) against Allstate Distributors and Transamerica Securities, respectively. Both groups of Defendants move to dismiss the amended complaint on the ground that Plaintiff has not cured any of the defects in his original complaint and still cannot state a claim upon which relief may be granted. Further, Defendants maintain their argument that the economic loss rule bars many of Plaintiff's claims. Upon careful consideration of the Motions, the responses and replies thereto, and the applicable case law, the Court grants the Defendants' Motions to Dismiss and dismisses all of Plaintiff's claims with prejudice.

## I. Factual Background

In its March 23rd Order, the Court set forth in detail the facts of this case. The Court hereby incorporates by reference the factual background set forth therein.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal of a claim is appropriate when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Ala.*, 30 F.3d 117, 120 (11th Cir.1994). Ordinarily, to survive a Rule 12(b)(6) motion, a complaint need only provide a short and plain statement of the claim and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When a complaint alleges fraud, the plaintiff must go beyond mere notice pleading and must state "with particularity" the circumstances constituting fraud. *See* Fed. R.Civ.P. 9(b). In either situation, a motion to dismiss under Rule 12(b)(6) tests not whether the Plaintiff will ultimately prevail on the merits, but rather whether the Plaintiff has properly stated a claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). There-

---

**1.** The Transamerica Defendants and the Allstate Defendants are referred to collectively as "Defendants."

**2.** Plaintiff's original complaint alleged counts of common law fraud (Counts I–II), negligent misrepresentation and omission (Counts III–IV), breach of contract (Counts V–VI), rescission of an annuity contract (Counts VII–VIII), negligent hiring (Counts IX–X), and breach of fiduciary duty (Counts XI–XII) against both the Transamerica Defendants and the Allstate Defendants.

fore, at this stage of the proceedings, the Court must accept the Plaintiff's allegations in the Complaint as true, and view those allegations in a favorable light to determine whether the Complaint fails to state a claim for relief. *S & Davis Int'l v. Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir.2000).

## III. Analysis

### A. *The Economic Loss Rule Bars Plaintiff's Tort Claims (Negligent Hiring, Training and Supervision; Negligent Misrepresentation and Omission; Fraud in the Inducement; and Civil Conspiracy).*[3]

■ Defendants reassert their arguments that the economic loss rule bars Plaintiff's tort claims. In its March 23rd Order, the Court gave Plaintiff the opportunity to re-plead his tort claims to show that they were independent from his breach of contract claim.[4] Plaintiff has not done so. As in his original complaint, Plaintiff alleges throughout his amended complaint that his participation in the Defendants' variable annuity contracts damaged his "nest egg." *See generally* Am. Compl. ¶¶ 16–23. This is the same injury that Plaintiff alleges in his breach of contract claims. *See id.* at ¶¶ 305–326. Accordingly, these claims must be dismissed.

■ The Court agrees with Defendants that Plaintiff attempts to avoid the economic loss rule by pleading claims of fraud in the inducement. Claims for fraudulent inducement can sometimes survive the economic loss rule. *See Medalie*, 87

F.Supp.2d at 1305. However, this is only the case in situations in which the plaintiff can show that the fraudulent inducement is *extraneous* to the breach of contract. *Id.* In *Medalie*, the court held that because the plaintiff did not allege that the defendant breached a contractual obligation to provide a rate of return higher than money market funds or CDs, plaintiff's fraud in the inducement claim based on material misrepresentations regarding risk and reward of the security instruments in which he invested withstood the economic loss rule. *Id.* Here, Plaintiff similarly alleges that Defendants' material misrepresentations involved risk and reward: they included guarantees that the variable annuity contracts would not endanger his "nest egg." *See* Am. Compl. ¶¶ 184–201; 252–69. However, the difference between Plaintiff and the *Medalie* plaintiff is that the instant breach of contract allegations stem solely from a letter dated March 28, 2002, *two years after* the dates of the variable annuity contracts, which purports to "guarantee" Plaintiff's principal amount deposited in both the Allstate and Transamerica annuity funds (i.e., Plaintiff's "nest egg"). Plaintiff pleads in the alternative that (1) either the letter, which memorializes an alleged "oral" agreement made prior to the date of the written variable annuity contract, should be considered part of the written variable annuity contract; or (2) that the letter is a "valid and binding subsequent agreement" breached by Defendants. *See* Am. Compl. ¶¶ 303–26. Be-

---

3. The Court addresses several other grounds for dismissal of Plaintiffs' tort claims later in this Order.

4. As the Court discussed in its March 23rd Order, the economic loss rule provides that contract principles are more appropriate than tort principles for resolving economic losses without accompanying physical injury to property other than that which is the subject

of the contract. *Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1299–1300 (S.D.Fla.2000). "Where the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Eye Care Int'l Inc. v. Underhill*, 92 F.Supp.2d 1310, 1315 (M.D.Fla.2000).

cause Plaintiff's claims for fraud in the inducement relate to Defendants' alleged breach of the terms of the March 28, 2002 letter, they cannot withstand the operation of the economic loss rule.[5]

The economic loss rule also bars Plaintiff's new tort claim for civil conspiracy against Allstate Distributors and Transamerica Securities. Just as with fraudulent inducement, circumstances exist in which the economic loss rule will *not* bar a civil conspiracy claim. *See Hilliard v. Black*, 125 F.Supp.2d 1071, 1082 (N.D.Fla. 2000) (civil conspiracy claim not barred by economic loss rule where plaintiff towing company alleged that defendant bank conspired with plaintiff's competitor to delay repairs to defendant's tow truck in order to force plaintiff into insolvency) (internal citations omitted); *see also Invo Florida Inc. v. Somerset Venturer, Inc.*, 751 So.2d 1263, 1266 n. 1, 1268 (3d DCA 2000) ("The elements required for conspiracy to effect fraudulent transfer ... are different from the breach of contract elements," and appellate court reversed summary judgment on civil conspiracy claim since claim was not barred by the economic loss rule). However, here, Plaintiff's claims for civil conspiracy are "inextricably intertwined" with his breach of contract claims, in that they deal with his participation in the annuity contracts and the alleged loss of his "nest egg." Because Plaintiff has not pled an injury separate and apart from the loss of his "nest egg," his claims for civil conspiracy cannot survive.

**B. *Plaintiff Still Has Not Alleged an Employer–Employee Relationship Necessary to Sustain a Claim for Negligent Hiring, Training, and Supervision.***

In addition to the operation of the economic loss rule on Plaintiff's claim for negligent hiring, training, and supervision, this claim fails for another reason: Plaintiff has once again failed to allege an employer-employee relationship between Quigley, the broker who sold him the variable annuity products at issue, and Defendants. In its March 23rd Order, this Court ruled that employment is a necessary predicate to a claim for negligent hiring, training, and supervision. *See* March 23rd Order at pg. 9–10 (citing *Malicki v. Doe*, 814 So.2d 347, 364 (Fla.2002) and *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2d DCA 1986)). The Court noted that Plaintiff alleged in his original complaint that Quigley was an employee of non-party A.G. Edwards & Sons, Inc. *See* Compl. ¶ 21. In his amended complaint, and as the Transamerica Defendants note, Plaintiff conspicuously makes no reference to Quigley's employment at A.G. Edwards. Rather, he continues to focus on Quigley's agency relationship with the Defendants. As it did in its March 23rd Order, the Court acknowledges Plaintiff's allegations of an agency relationship, but maintains that an essential element of a claim for negligent hiring, training, and supervision is *employment*. Because Plaintiff has still not alleged an employment relationship be-

---

**5.** The Court notes Defendants' alternative argument that Plaintiff's claims for fraudulent/negligent misrepresentation must be dismissed because they were statements of nonactionable opinion the annuity products were "suitable," "safe," and "would achieve [Plaintiff's] investment goal better than his current portfolio." The Court believes that the operation of the economic loss rule more appropriately disposes of these claims, since it is not always the case that these types of statements are non-actionable opinions. *See generally Houchins v. Case*, 138 Fla. 368, 189 So. 402 (1939) (affirming appellate court's ruling that statements including one that investment in an oyster property company was a "first class and safe investment" were actionable as material misrepresentations).

tween Quigley and Defendants, Plaintiff's claims must be dismissed.

### C. *Plaintiff's Claims of Fraudulent and Negligent Omission Must Be Dismissed Because Plaintiff Has Still Not Alleged a Fiduciary Relationship With Defendants.*

Plaintiff's re-asserted claims of omission center on four particular omissions: (1) Defendants failed to disclose to Plaintiff that Quigley had a "conflict between his personal interest in receiving a five-figure commission and his duty to protect Plaintiff's nest egg" (Am.Compl.¶¶ 63, 107); (2) Defendants failed to disclose to Plaintiff the amount of the commission paid to Quigley in connection with Plaintiff's transaction (*Id.* at ¶¶ 70, 114); (3) Defendants failed to disclose to Plaintiff that it offered Quigley additional commission "for selling the variable annuity within a short period" (*Id.* at ¶¶ 77, 121); and (4) Defendants failed to disclose to Plaintiff that Quigley allegedly had a history of buying "unsuitable investments for his customers" (*Id.* at ¶¶ 98, 143). Notwithstanding the operation of the economic loss rule, because Plaintiff still has not alleged a duty of disclosure on the part of Defendants to provide the above information to him, his claims cannot survive for this reason, as well.

Under Florida law, omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information. *TransPetrol Ltd. v. Radulovic* 764 So.2d 878, 880 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclo-

sure of a material fact may only support an action for fraud where there is a duty to disclose."). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* at 880 (citing *State v. Mark Marks, P.A.,* 654 So.2d 1184, 1189 (Fla. 4th DCA 1995)); *see also Friedman v. Am. Guardian Warranty Servs.,* 837 So.2d 1165, 1167 (Fla. 4th DCA 2003) ("The amended complaint does not allege a relationship of trust between Friedman and Guardian, therefore it does not properly allege fraud by concealment ... The court below was correct in granting the motion to dismiss"). In an arms-length transaction, neither party owes a duty to the other to act for that party's benefit or protection, or to disclose facts that the other party could have discovered through its own diligence. *Taylor Woodrow Homes,* 850 So.2d at 540–41 (citing *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991)).

Here, Plaintiff still has not alleged a fiduciary[6] or other confidential or contractual relationship of trust with Defendants, such that they owed him a duty of disclosure. Plaintiff still has also not alleged facts demonstrating that he was the "weaker party" in the transaction. Indeed, in another attempt at pleadings gamesmanship, Plaintiff has conspicuously removed from his amended complaint all references in his original complaint to his extensive post-graduate education, career as a college professor, and operator of a chain of oil change stations for 17 years. Accordingly, Plaintiff's claims for fraudu-

---

6. In its March 23rd Order, the Court explained that a fiduciary relationship is one "built based upon the trust and confidence between the parties where confidence is reposed by the weaker party and a trust accepted by the party in a position of superiority

and influence." Order at pg. 10 (citing *Argonaut Dev. Group v. SWH Funding Corp.,* 150 F.Supp.2d 1357, 1363 (S.D.Fla.2001) and *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp., Etc.,* 850 So.2d 536 (Fla. 5th DCA 2003)).

lent/negligent misrepresentation by omission must be dismissed.

### D. Plaintiff's Breach of Contract Claims Again Fail, Because the Statute of Frauds Bars the Introduction of an Oral Agreement, the Parol Evidence Rule Bars the Introduction of Extrinsic Evidence to Contradict a Written Agreement, and Plaintiff Has Not Alleged How Defendants Have Breached Any Agreement With Him.

In its March 23rd Order, the Court determined that Plaintiff had failed to identify, with any degree of specificity, a valid contract that Defendants allegedly breached. The Court further determined that Plaintiff had failed to identify *how* Defendants breached the contract and what damages, if any, he suffered as a consequence of the alleged breach. In an attempt to cure his defects in the original complaint, Plaintiff has attached as the breached "contract" the March 28, 2002 letter from Quigley to Plaintiff, in which Quigley purports to guarantee that Plaintiff would not lose his principal investment in Defendants' annuities. Although Plaintiff argues that he is making two arguments in the alternative, it appears that he is really advancing three separate theories with respect to his breach of contract claims: (1) Sometime in 2000, prior to entering into the written annuity contracts, Plaintiff and Quigley (allegedly on behalf of Defendants) entered into an oral agreement, by which Quigley guaranteed that Plaintiff would not lose his principal investments in Defendants' annuity products; (2) the March 28, 2002 letter, which purportedly "memorialized" Plaintiff's and Quigley's alleged 2000 oral agreement, should be construed as part of the written annuity contracts executed in 2000; or (3) the March 28, 2002 letter is a subsequent contract that Defendants breached. Plaintiff cannot proceed on any of these theories.

As the Allstate Defendants note, the parol evidence rule bars Plaintiff from offering evidence of an "oral agreement" with Quigley, made prior to entering into the written annuity contracts in 2000. "Evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract." *Johnson Enters. of Jacksonville v. FPL Group,* 162 F.3d 1290, 1309 (11th Cir.1998) (citation and internal quotation marks omitted); *see also Bruce A. Ungerleider, M.D. v. Gordon,* 214 F.3d 1279, 1282 (11th Cir.2000). Here, it is undisputed that Plaintiff bought Defendants' annuity products via written contract in 2000. Plaintiff cannot offer the terms of an unspecified "oral agreement" to vary the terms of the written contract he entered when he purchased Defendants' annuities. Further, Plaintiff cannot avoid the operation of the statute of frauds with respect to this purported oral contract by asserting fraud or fraudulent inducement claims. *See Ashland Oil, Inc. v. Pickard,* 269 So.2d 714, 721 (Fla. 3d DCA 1972) ("The Florida rule is that the statute of frauds may not be avoided by a suit for fraud based on oral representations.").

With respect to the March 28, 2002 letter as a "memorialization" of the alleged 2000 "oral agreement" between Plaintiff and Quigley, the Court finds it difficult to construe as *a part of* the 2000 contracts for the purchase of annuities a letter dated two years *after* the annuities were purchased. Thus, the only possible theory on which Plaintiff can stand, is that the March 28, 2002 letter is a subsequent agreement that modified the terms of the previous written agreement, because the parol evidence rule does not bar the admission into evidence of such an agreement. *Frank Griffin Volkswagen v.*

*Smith,* 610 So.2d 597, 609 (Fla. 1st DCA 1992). However, this is not what Plaintiff alleges. Plaintiff claims that the March 28, 2002 letter is a *separate,* subsequent agreement between himself and Quigley (on behalf of Defendants), not a modification of the prior agreements. Further, he still has not alleged exactly how Defendants breached this subsequent agreement, merely claiming that Defendants "ha[ve] breached that contract materially." As the Court warned Plaintiff in its March 23rd Order, this failure to identify *how* Defendants materially breached the contract needed to be cured. Plaintiff has not done so; therefore, his breach of contract claims must be dismissed.

**E. *Plaintiff's Claims for Civil Conspiracy Fall Because Florida Does Not Recognize an Independent Claim for Civil Conspiracy, and Plaintiff Has Not Alleged a Valid Claim That Could Form the Basis of a Conspiracy.***

Notwithstanding the operation of the economic loss rule, Plaintiff's claims for civil conspiracy also fail because Plaintiff has not alleged a valid basis for the purported conspiracy. "Florida does not recognize an independent action for conspiracy." *Allocco v. City of Coral Gables,* 221 F.Supp.2d 1317, 1360–61 (S.D.Fla. 2002) (citing *Churruca v. Miami Jai–Alai, Inc.,* 353 So.2d 547, 550 (Fla.1977)). In Florida, a civil conspiracy derives from the underlying claim that forms the basis of the conspiracy. *Id.* at 1361 (citing *Czarnecki v. Roller,* 726 F.Supp. 832, 840 (S.D.Fla.1989)) (discussing and applying Florida law). Pursuant to this rule, a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim. *Id.* (citing *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1217 (11th Cir.1999)) (applying Florida law). Because the Court has found that none of Plaintiff's other claims can proceed, Plaintiff's civil conspir-

acy claims necessarily fail as a matter of law. *See id.* ("Because the claim underlying the plaintiffs' conspiracy count has failed, and the plaintiffs have not asserted any other unlawful action in support of their conspiracy count, count III must also fail.")

**IV. Conclusion**

Based upon the foregoing, it is hereby

ORDERED that:

(1) The Transamerica Defendants' Motion to Dismiss [DE–42] is GRANTED;

(2) The Allstate Defendants' Motion to Dismiss [DE–43] is GRANTED;

(3) Plaintiff's claims are DISMISSED WITH PREJUDICE.

(4) This case is CLOSED. All pending motions not ruled upon are DENIED as moot.