# United States Court of Appeals for the Federal Circuit

---

**ABB TURBO SYSTEMS AG,**
**a Switzerland corporation,** AND
**ABB INC., a Delaware corporation,**
*Plaintiffs-Appellants,*

v.

**TURBOUSA, INC., a Florida corporation,**
AND **WILLEM FRANKEN,**
*Defendants-Appellees.*

---

2014-1356

---

Appeal from the United States District Court for the Southern District of Florida in No. 0:13-cv-60394-KMM, Judge K. Michael Moore.

---

Decided: December 17, 2014

---

KURT L. GLITZENSTEIN, Fish & Richardson, P.C., of Boston, Massachusetts, argued for plaintiffs-appellants. Of counsel on the brief was WILLIAM R. TRUEBA, JR., Espinosa│Trueba, PL, of Miami, Florida.

JOHN H. PELZER, Greenspoon Marder, P.A., of Fort Lauderdale, Florida, argued for defendants-appellees.

---

Before PROST, *Chief Judge,* NEWMAN and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

In this action, ABB Turbo Systems AG and ABB Inc. (collectively ABB) allege, among other things, state-law torts of misappropriation of trade secrets and conspiracy to misappropriate trade secrets. Before discovery was conducted or an answer filed on those allegations, the district court dismissed the complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted. We reverse, concluding that the district court relied on judgments about the merits that go beyond what is authorized at the complaint stage. We remand for further proceedings. We do not rule on the defendants' arguments for upholding the dismissal on grounds that the district court did not adopt.

BACKGROUND

ABB designs, produces, and sells exhaust-gas turbochargers and turbocharger parts, primarily for use in large, ocean-going vessels and in power plants. In 2012, ABB filed a complaint in the Middle District of Florida accusing TurboUSA, Inc., and TurboNed Service B.V. of infringing two of ABB's turbocharger-related patents. Complaint, *ABB Turbo Sys. AG v. TurboNed Serv. B.V.*, No. 12-cv-01322 (M.D. Fla. June 13, 2012) (*Complaint*); *see* 28 U.S.C. § 1338 (jurisdiction over patent cases). TurboNed ("Ned" referring to the Netherlands) and TurboUSA manufacture, sell, and service parts for turbochargers, including ABB turbochargers. *Complaint* ¶¶ 23–24. As one basis for its allegation that the infringement was willful, ABB alleged that one of its former employees had improperly obtained and transferred to TurboUSA confidential information relating to ABB parts embodying its patented inventions. *Id.* ¶¶ 26–30. The Middle District court transferred the case to the Southern

District of Florida.　Order Granting Motion to Transfer Venue, *ABB Turbo*, No. 12-cv-01322 (M.D. Fla. Feb. 18, 2013).

After filing its original complaint, ABB received information that, it alleges, suggested that Johan ("Hans") Franken, who is TurboNed's former owner and TurboUSA's current indirect owner, and Willem Franken, who is TurboUSA's current president (and the son of Hans), had collaborated in the covert misappropriation of ABB's trade secrets concerning the design, manufacture, servicing, and pricing of ABB's turbochargers and parts. Motion to Amend Complaint, *ABB Turbo Sys. AG v. TurboNed Serv. B.V.*, No. 13-cv-60394 (S.D. Fla. May 28, 2013).　ABB sought and was granted leave to amend its complaint to add claims of misappropriation of trade secrets under Fla. Stat. §§ 688.001–688.009 and of civil conspiracy to misappropriate trade secrets, and to join Hans and Willem Franken as defendants for those claims. *Id.*; Amended Complaint, *ABB Turbo*, No. 13-cv-60394 (S.D. Fla. July 12, 2013) (*Amended Complaint*); *see* 28 U.S.C. § 1367 (supplemental jurisdiction).

ABB's amended complaint makes allegations of various deceptive and improper transactions—allegations that, at this stage of the case, we simply assume to be true.　Thus: Hans Franken stopped working for ABB in 1986 to found TurboNed and compete with ABB in the market for parts and servicing of ABB-sold turbochargers. *Amended Complaint* ¶¶ 36–42.　For more than twenty years, from 1986 until the sale of TurboNed to a third party in 2009, Hans Franken and employees of TurboNed paid at least one ABB employee for confidential information related to ABB parts, servicing, and pricing. *Id.* ¶¶ 32, 72–73.　At least one such transaction occurred in the garage of a hotel in Switzerland, and on multiple occasions TurboNed employees carried envelopes of cash to exchange for ABB's confidential information. *Id.* ¶¶ 76, 78; *see also id.* ¶ 82 (alleging other exchanges that oc-

curred electronically, by mail, and in Cyprus). TurboNed employees altered confidential ABB documents in their possession to obscure references to ABB, in part to conceal the source of the information, in connection with the sale of TurboNed to a new owner in 2009. *Id.* ¶¶ 96–98. TurboNed soon went into bankruptcy in Europe. *See id.* ¶ 3.[1]

The confidential information that TurboNed obtained was passed along to TurboUSA, *id.* ¶¶ 101–103—a company that Hans Franken established in the 1990s, helped to run as an officer and director at times, *id.* ¶¶ 46–48, and continues to own through his control of an intermediate holding company, *id.* ¶¶ 54–55. TurboUSA used and continues to use ABB's trade-secret information to advance its business interests. *Id.* ¶¶ 60–62, 103–05. In 2008, TurboUSA hired a former ABB employee who provided TurboUSA with confidential data that he had stolen from ABB before he left ABB's employment. *Id.* ¶¶ 115–17. Moreover, in 2009, Hans Franken used his control over TurboUSA—which his son Willem was managing—to artificially inflate the prices TurboUSA paid to TurboNed for goods or services, thereby increasing TurboNed's revenues to levels required for Hans to receive

---

[1]    Along with its motion to amend the complaint, ABB submitted to the district court a public letter from the new owner of TurboNed. Public Letter from TurboNed Global Benelux B.V. (Dec. 7, 2012) (at J.A. 315). The letter indicates that, after the sale, the new owner, prompted by new information that led it to launch an investigation, "confirmed certain material allegations of ABB" about the acquisition of protected ABB information by TurboNed employees and management, leading to a termination of business relations between ABB and TurboNed and to the latter's filing for bankruptcy. *Id.*

contingent, revenue-dependent compensation for his sale of TurboNed to the new owner. *Id.* ¶¶ 66–67.

After ABB filed its amended complaint, and after ABB stipulated to the bankrupt TurboNed's dismissal without prejudice, the three remaining defendants filed motions to dismiss the entire amended complaint under Rule 12(b)(6) for insufficient pleading. TurboUSA and Willem Franken's Motion to Dismiss the Amended Complaint, *ABB Turbo*, No. 13-cv-60394 (S.D. Fla. Aug. 12, 2013); Johan Franken's Motion to Dismiss the Amended Complaint, *ABB Turbo*, No. 13-cv-60394 (S.D. Fla. Sep. 12, 2013). The defendants also argued that the trade-secret and conspiracy claims should be dismissed because they were time-barred by Fla. Stat. § 688.007, and Hans argued for dismissal for lack of personal jurisdiction. The motions made no specific arguments about the patent claims in the amended complaint.

The district court granted the motions as to ABB's trade-secret and conspiracy claims. It held that ABB's trade-secret claim is "not well-formulated" with regard to two requirements of Florida trade-secret law: (1) a trade-secret claim must be brought "within 3 years after the misappropriation is discovered or by the reasonable exercise of diligence should have been discovered," Fla. Stat. § 688.007; and (2) the allegedly misappropriated information must have been "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," Fla. Stat. § 688.002(4)(b). Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, *ABB Turbo*, No. 13-cv-60394, slip op. at 6 (S.D. Fla. Jan. 5, 2014) (*Dismissal Order*). The district court saw two ways to view the factual allegations in light of those requirements. In one view, ABB's claims were filed too late, because ABB claimed misappropriation of its secrets over a period of nearly thirty years, with involvement of high-level ABB employees. Had ABB exercised reasonable diligence, the court reasoned, it "should have at least

had an inkling that something was amiss" at some point before 2012, when ABB claimed it first knew of the misappropriations. *Id.* In the alternative view, given "the enormity of the scope of the misappropriations[,] in terms of geographic area and number of individuals involved," and perhaps also assuming no detection by ABB, "it would seem highly unlikely that the Trade Secrets were the subject of reasonable efforts to protect their secrecy." *Id.* at 7. For those reasons, the district court dismissed the trade-secret claim, and the claim of conspiracy to misappropriate trade secrets then also fell, because Florida law does not recognize a conspiracy claim independent of another underlying legal claim. *Id.* at 7 n.7 (citing *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005)).

The parties subsequently agreed to settle the patent-infringement claims. Final Judgment, *ABB Turbo*, No. 13-cv-60394 (S.D. Fla. Feb. 21, 2014). The district court issued a final judgment approving the settlement and dismissing all remaining claims with prejudice. *Id.* ABB timely appealed the dismissal of its trade-secret and conspiracy claims.

We have jurisdiction under 28 U.S.C. § 1295(a)(1). Two simplifications are worth noting. It is undisputed here that, if the trade-secret claim is revived on appeal, revival of the conspiracy claim automatically follows. And during this appeal, pursuant to a partial settlement, Hans Franken has been dismissed from the case. *See* Order Granting Motion to Withdraw Party, *ABB Turbo Sys. AG v. TurboUSA, Inc.*, No. 2014-1356 (Fed. Cir. Nov. 10, 2014). Accordingly, the only issue we need to address is whether the district court erred in dismissing the trade-secret claim against TurboUSA and Willem Franken.

DISCUSSION

Following the law of the regional circuit in which the case arose, we review the dismissal under Rule 12(b)(6) de novo, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A

Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative. Thus, Rule 8(a)(2) requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which requires that the complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* Rule 8's pleading standard "does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) ("Specific facts are not necessary . . . ."); *Speaker*, 623 F.3d at 1380 (quoting *Iqbal*). But it requires more than "barren recitals of the statutory elements, shorn of factual specificity," *Speaker*, 623 F.3d at 1384, and more than the mere possibility of liability or mere consistency with liability, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557, 570. What is needed is "facial plausibility" of the claim, which exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556.

## B

Applying those standards to the trade-secret claim here, we conclude that the district court erred in its dismissal of the amended complaint. A plaintiff claiming misappropriation of trade secrets under Florida law must allege facts giving rise to a reasonable inference that (1) "the plaintiff possessed secret information and took reasonable steps to protect its secrecy," *Medimport S.R.L v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (quotation marks and citation omitted); (2) "the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it," *id.*; *see* Fla. Stat. § 688.002; and (3) the secret "[d]erives independent economic value" from not being generally known or ascertainable through proper means, Fla. Stat. § 688.002(4)(a). Neither of the reasons the district court gave supports the conclusion that ABB's amended complaint is insufficient.

## 1

The district court's first ground for dismissal concerns the timeliness of the complaint. But "[a] statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'" *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845–46 (11th Cir. 2004) (alterations in original) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Dismissal at the pleading stage on statute-of-limitations grounds ordinarily is

improper unless it is "apparent from the face of the complaint that the claim is time-barred." *Id.* (quotation marks and citation omitted). Here, to approve dismissal on timeliness grounds, we would have to conclude that ABB's complaint alleges facts making it apparent that ABB discovered, or "by the exercise of reasonable diligence should have . . . discovered," the alleged misappropriations at least three years before it sued in June 2012. Fla. Stat. § 688.007. We cannot so conclude.

The amended complaint says nothing to identify an actual or constructive discovery before June 2009. It does not allege when or how ABB discovered the misappropriations. ABB's only factual allegations regarding when it learned of the alleged misappropriations appear in its motion to amend its original complaint, which state that it did not know of the misconduct until after filing its initial complaint in 2012. Even if those allegations were considered, they would not support the district court's conclusion: they controvert rather than indicate actual or constructive discovery before June 2009.

The district court rested its untimeliness conclusion on the amended complaint's allegations that misconduct occurred over a long period and through geographically dispersed meetings. The court reasoned that ABB "should have at least had an inkling that something was amiss." *Dismissal Order* at 6. We need not explore the relationship between that formulation and the governing "should have discovered" standard to conclude that the district court's rationale is inadequate to support dismissal.

The court's rationale exceeds the limits on factual assessments appropriate when ruling on a motion to dismiss. The amended complaint alleges distinct acts of misappropriation of distinct trade secrets through clandestine communications and cash payments, with further concealment efforts undertaken after acquisition of the secrets; and nothing in the amended complaint makes

clear that the trade secrets were the kind that would readily reveal themselves in the marketplace conduct of the users of the information.[2] This seems enough to go beyond the "conclusory" and "factually neutral" to make affirmatively plausible the *lack* of actual or constructive discovery, *Twombly*, 550 U.S. at 558 n.5, but ABB did not need to meet even that standard in order to avoid a time-liness dismissal. It is enough that ABB's amended com-plaint certainly does not state facts making apparent that ABB actually or constructively discovered the alleged misappropriations by June 2009. Not surprisingly, sever-al courts have treated comparable issues as factual ones not appropriate for resolution at the complaint stage. *See Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 367 (7th Cir. 1997) ("Whether a plaintiff had sufficient facts to place him on inquiry notice of a claim for securities fraud . . . is a question of fact, and as such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)."), quoted approvingly in *La Grasta*, 358 F.3d at 848; *Puterman v. Lehman Bros., Inc.*, 332 F. App'x 549, 552 n.3 (11th Cir. 2009) ("Inquiry notice [is] a fact ques-tion [that] generally is inappropriate for resolution on a Rule 12(b)(6) motion."); *cf. Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1318 (Fed. Cir. 2012) (reversing summary judgment for defendant because of factual

---

[2] The 2012 Public Letter, to the extent it may be considered, may suggest that the new owner, with pre-sumably full pre-acquisition access to TurboNed's internal documents and employees, did not detect the alleged misappropriations before buying the company or, indeed, until ABB and a forensic investigation revealed the problem. If detection evaded a third party with the means and incentive to detect possible liability and crip-pling of a business relationship, that fact may help render it reasonable that detection evaded ABB.

dispute over whether the plaintiff knew or should have known of trade-secret misappropriation).

2

The district court's second, alternative ground for dismissal is also insufficient to support the judgment. The district court held that ABB did not sufficiently allege facts showing that it reasonably protected its trade-secret information. *Dismissal Order* at 6–7. The court's analysis was too demanding of specificity and too intrusive in making factual assessments. ABB has alleged "enough facts to state a claim to relief that is plausible on its face"; it has "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

ABB alleged that its secrecy-maintenance efforts "includ[ed] imposing confidentiality and nondisclosure obligations on ABB employees that have access to ABB's Turbocharger Trade Secrets, marking documents constituting ABB's Turbocharger Trade Secrets with confidentiality designations and/or other indicia prohibiting the reproduction or dissemination of such documents or information to third parties, [and] restricting physical and electronic access by third parties to ABB's Turbocharger Trade Secrets." *Amended Complaint* ¶ 35. The district court cited no authority suggesting that such measures are not reasonable precautions to protect trade secrets under the governing law, and other courts have held allegations of similar protective measures sufficient at the pleading stage. *Sensormatic Elecs. Corp. v. TAG Co. US*, 632 F. Supp. 2d 1147, 1185 (S.D. Fla. 2008); *PartyLite Gifts, Inc. v. MacMillan*, No. 10-cv-1490, 2010 WL 5209364, at *4 (M.D. Fla. Nov. 24, 2010). We follow those authorities, noting that Florida law requires only "reasonable" protections and that the complaint stage is not well-suited to determining what precautions are reasonable in a given context. *See Rockwell Graphic Sys., Inc. v.*

*Dev Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991) ("[O]nly in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment, because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved.").

We see no basis in this case to deem ABB's direct factual allegations insufficient to nudge the claim into the realm of a plausible inference that ABB adequately protected its trade secrets. The district court reasoned that the scope of the alleged misappropriations, perhaps together with the lack of detection by ABB, made it "highly unlikely" that ABB was "actually restricting physical and electronic access to the information and taking other protective measures." *Dismissal Order* at 6–7. But it is simply not implausible that adequate protections were in place and yet a series of misappropriations occurred without ABB's detection.

The rationale for a contrary conclusion, at least at the complaint stage, is not convincing. Protections may be legally adequate to confer legal status as secrets, but still not perfectly prevent misappropriation. Indeed, trade-secret law is premised on that possibility; there would be no actionable misappropriation otherwise. Moreover, once the protections are overcome by those engaged in misappropriation, detectability turns on the acts of the miscreants, such as their furtiveness and concealment efforts. But those acts have no particular bearing on whether the actions of the secret owner in seeking to protect against disclosure were adequate. The sheer number and scope of misappropriations, considered apart from detectability, may well have a logical bearing on assessing the reasonableness of protective measures. But that presents a classic factual question turning on the details of the misappropriations. It cannot be answered by judicial assessment at the complaint stage in this case.

ABB's specific factual allegations of protective measures are enough to survive a motion to dismiss. To be sure, *Twombly* and *Iqbal* indicate that, in separating conclusions from facts and deciding whether the alleged facts make affirmatively plausible the asserted basis of liability, *Twombly*, 550 U.S. at 557 n.5, courts deciding a motion to dismiss for insufficient pleading may consider the strength of alternative explanations of the alleged facts. *See Twombly*, 550 U.S. at 567–68 (claim of parallel business conduct not enough to support conspiracy claim where no facts alleged that suggested reason something other than individual self-interest); *Iqbal* 556 U.S. at 681–82 (claim of discriminatory policy insufficient where no official communications or other facts alleged beyond allegation of disproportionate effect on Arab Muslim men from investigation of 9/11 attacks carried out by Arab Muslim men). But such consideration is limited, because the court's role is only to determine if the factual allegations go beyond being "merely consistent with" liability to "plausibly suggest[ing]" liability. *Twombly*, 550 U.S. at 557. Making that distinction requires a "context-specific" assessment of the particular complaint, *Iqbal*, 556 U.S. at 679, made with the recognition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable," *Twombly*, 550 U.S. at 556. In this case, for the reasons given, the factual allegations meet the pleading standard regarding protection of the alleged trade secrets.

C

TurboUSA and Willem Franken make two arguments for affirmance of the dismissal on grounds that the district court did not adopt. One is that ABB insufficiently pleaded facts to meet the legal requirement that its trade-secret information derived independent value from not being generally known or ascertainable. *See* TurboUSA Br. at 3–4, 12. ABB responds by, for example, pointing to allegations that its secrets include information not rea-

sonably obtained by reverse engineering, that efforts at reverse engineering failed, that ABB made significant investments in creating the information and took steps to protect it, and that TurboNed paid for the information, all suggesting its value. The second argued alternative ground for affirming dismissal is that ABB insufficiently pleaded that TurboUSA or Willem Franken had the knowledge of the misappropriations required for liability. *See* TurboUSA Br. at 13–19. On this issue, TurboUSA and Willem Franken stress that the majority of ABB's allegations refer to misconduct by TurboNed and Hans Franken. ABB responds by stressing its claims of close, longstanding relations between TurboNed, TurboUSA, Hans, and Willem—illustrated, ABB alleges, by the facts that Hans, who was central to TurboNed, was at times also an officer, director, and indirect owner of TurboUSA, and that, seemingly while Willem was President of TurboUSA, Hans exerted enough control over TurboUSA to influence the prices TurboUSA paid to TurboNed.

Because the district court did not address those alternative arguments, we do not decide whether, in light of our opinion, the claims should be dismissed for either of those reasons. We leave the matter to the district court.

We note the Supreme Court's recent decision in *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam) ("A plaintiff, [*Twombly* and *Iqbal*] instruct, must plead facts sufficient to show that her claim has substantive plausibility. Petitioners' complaint was not deficient in that regard. Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). We note, too, the importance of a "context-specific" application of Rule 8, *Iqbal*, 556 U.S. at 679, and the particular need to apply the plausibility standard with a recognition that direct

evidence of some facts—such as guilty knowledge, in some cases—may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 & n.15 (2011) (holding, even under a special statutory heightened pleading standard requiring a "strong inference" of scienter, that plaintiff's claim could not be dismissed where it pleaded facts "sufficient to render the inference of scienter at least as compelling as the inference" of innocent conduct; and stating that determining guilty knowledge requires courts to review "all the allegations holistically" (quotation marks and citation omitted)); *Lamm v. State Street Bank & Trust Co.*, 749 F.3d 938, 945 (11th Cir. 2014) (finding insufficient pleading in a particular case after noting: "We are also mindful of the challenge a plaintiff faces in establishing a defendant's mental state without the benefit of discovery."); Honorable Mark R. Kravitz, *Report of the Civil Rules Advisory Committee* 53 (May 2, 2011) ("How much fact is required to support a reasonable inference of liability varies with context, and in many types of action can be rather scant."); *McCauley v. City of Chicago*, 671 F.3d 611, 619 n.2 (7th Cir. 2011) (highlighting commentary).

CONCLUSION

We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

Costs to ABB.

**REVERSED AND REMANDED**