# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-1876
LT Case No. 16-2023-CA-10274

_____

ONASSIS BURRESS and TONI
DICHARIA,

      Appellants,

      v.

ROOTS and FRUITS JUICERY INC.
and AVENUES MALL, LLC,

      Appellees.

_____

Nonfinal appeal from the Circuit Court for Duval County.
Michael Scott Sharrit, Judge.

Robert W. Thielhelm, Jr., Brian C. Blair and Lindy K. Keown, of
Baker & Hostetler, LLP, Orlando, for Appellants.

J. Michael Lindell and Connor M. Larkin, of Lindell Farson &
Zebouni, P.A., Jacksonville, and Michael J. Korn, of Korn &
Zehmer, P.A., Jacksonville, for Appellees.

February 6, 2026

WALLIS, J.

      We affirm the trial court's nonfinal order on appeal and write
merely to clarify a statement of law in the order that may cause
some confusion.  Specifically, the order stated, "Florida law makes

clear, in the context of commercial torts, proof of fraud sufficient to support compensatory damages necessarily is sufficient to create a jury question regarding punitive damages. *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 538 (Fla. 1987); *see also Cates v. Zeltiq Aesthetics, Inc.*, 2020 WL 13413674, at *4 (M.D. Fla. Aug. 25, 2020)." However, as explained in *KIS Group, LLC v. Moquin*, 263 So. 3d 63, 66 (Fla. 4th DCA 2019), the holding in *Ablanedo* that "proof of fraud sufficient to support compensatory damages necessarily is sufficient to create a jury question regarding punitive damages" was written in the specific context of the sufficiency of the evidence on a motion for directed verdict on the claim for punitive damages after the jury considered the issue of compensatory damages on a fraud claim. This holding cannot be applied by rote to other procedural contexts and evidentiary standards. *See KIS Group, LLC*, 263 So. 3d at 66–67.

In this case, the lower court has determined that the amended complaint sufficiently states a claim for fraudulent inducement to contract. In the non-final order on appeal, the lower court granted plaintiff Roots and Fruits' motion to amend the complaint to seek punitive damages against Appellants. The lower court's order suggests that sufficiently alleging in the amended complaint a claim for fraudulent inducement for which the plaintiff seeks compensatory damages necessarily means that the plaintiff has shown a reasonable evidentiary basis to seek punitive damages. While it is true that a claim for fraudulent inducement to contract necessarily involves the element of intentional misconduct, and section 768.72(2), Florida Statutes, requires a showing of intentional misconduct or gross negligence in order for a defendant to be found liable for punitive damages, sufficient allegations in a complaint to state a claim for the contractual tort do not, per se, meet the evidentiary and procedural requirements of section 768.72. Section 768.72(1) requires the party moving to amend to seek punitive damages to make "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." As we cautioned in *Potter v. S.A.K. Development Corp.*:

> This case illustrates the sort of confusion that can result when the statutory procedure is not complied with. Before a defendant may be

subjected to financial worth discovery and required to defend a punitive damage claim, the statute requires that the plaintiff provide the court with a reasonable evidentiary basis for punitive damages. This procedure needs to be followed exactly as required by statute, *using the standards set forth in the statute*.

678 So. 2d 472, 473 (Fla. 5th DCA 1996) (emphasis added); *cf. Noack v. Blue Cross & Blue Shield of Fla., Inc.*, 872 So. 2d 370, 371–72 (Fla. 1st DCA 2004) ("Whether the entitlement to plead a claim for punitive damages has been established must be determined under the procedure and standards set forth in the statute, and our finding in the earlier appeal that respondents failed to establish that there is no material issue of disputed fact concerning the fraud claim is not the equivalent of petitioners establishing a reasonable evidentiary basis for punitive damages.").

As the order on appeal also held that Roots and Fruits' proffered evidence demonstrated a reasonable basis for a punitive damages claim against Appellants, we nonetheless affirm the order.

AFFIRMED.

SOUD, J., concurs.
KILBANE, J., dissents with opinion.

————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

————————————————

3

KILBANE, J., dissents.

This appeal is about pre-contract representations by a commercial landlord's agents and the ability to seek punitive damages based on these statements. Because the trial court granted the motion to amend for punitive damages based on unalleged gross negligence and the underlying claim of fraud in the inducement was unsupported, I dissent.

**Facts**

In late 2022 and early 2023, Avenues Mall, LLC ("Landlord") negotiated a temporary lease agreement ("Lease") with Roots and Fruits Juicery, Inc. ("Tenant") to operate a juice bar within the Avenues Mall in Jacksonville, Florida. These negotiations involved Landlord's area general manager, Onassis Burress, and senior leasing representative, Toni Dicharia (collectively, "Appellants"). In those discussions, Appellants told Tenant that it could sell smoothies under the Lease, even though other mall tenants also sold smoothies. Tenant asked about a previous tenant that had also sold smoothies in the mall, Juice Me Too. Appellants told Tenant that the previous tenant had product and marketing issues but did not inform Tenant that Juice Me Too had been asked to remove the word "smoothies" from their menu and advertising because of complaints by a permanent tenant, Smoothie Shack.

In January 2023, Landlord and Tenant executed the Lease for the express purpose of operating the juice bar and selling certain approved products including smoothies:

> **Sole Purpose for which Space Can Be Used by Tenant:**
> The operation of Roots + Fruits Juice bar and offering the retail sale of plant, fruit, vegetable and nut-based cold pressed juices; fruit juice; juice-derived products; frozen juice blend products; smoothies; acai bowls; juice detox

4

programs; fresh or frozen plant juices; juice cleanse kits and other related packages. All menu items are subject to approval by mall management.

The Lease also provided: "Addition of product other than those specified above is subject to Landlord's advance written approval, which may be withheld in Landlord's sole discretion." The Lease included a mutual right to terminate for any reason with thirty days' written notice.

In April 2023, after a buildout period, Tenant began operating the juice bar including selling smoothies. In mid-June 2023, however, Appellants asked Tenant to remove an advertisement featuring a smoothie and to remove smoothies from the menu based on complaints from Smoothie Shack. In July 2023, Landlord again requested Tenant cease selling smoothies before ultimately sending Tenant notice that it would be exercising its termination option under the Lease. Upon receiving the notice, Tenant voluntarily ceased its operations at the mall.

In September 2023, Tenant sued Landlord and Appellants for fraud in the inducement asserting Appellants represented that Tenant could sell the same menu of products it offered at another location, which included smoothies. In support, Tenant alleged Juice Me Too had also been asked to stop selling smoothies and therefore Landlord and Appellants knew Smoothie Shack would also object to Tenant selling smoothies. Tenant then moved to amend the complaint to include a claim for punitive damages.

In October 2023, Landlord and Appellants moved to dismiss the complaint asserting the fraud claim was barred by the independent tort doctrine and, further, Tenant could not establish its claim based on the facts and terms of the Lease. After a hearing, the trial court denied the motion finding the claim was purportedly based on extra-contractual promissory fraud and Landlord and Appellants "allegedly had undisclosed reasons to know or anticipate with predictable certainty that the

5

contractual provision for the permitted sale of smoothies would not be honored."

In February 2024, Tenant filed an amended motion to amend the complaint for punitive damages. In its amended proffer, Tenant asserted Landlord and Appellants committed intentional misconduct under section 768.72(2)(a), Florida Statutes (2024), which it reiterated at the hearing on the motion.

In June 2024, the trial court granted the motion in part ruling Tenant demonstrated a reasonable basis for asserting a claim for punitive damages against Appellants based on gross negligence under section 768.72(2)(b), Florida Statutes. At the same time, the court denied the motion as to Landlord. Appellants timely appealed.

**Merits**

The trial court's ruling on a motion for leave to amend the complaint to assert punitive damages is reviewed de novo. *See Orlando Health, Inc. v. Mohan*, 387 So. 3d 477, 482 (Fla. 5th DCA 2024).

To assess the claim for punitive damages, the trial court conducts a two-step inquiry. *Duff v. Racine*, 414 So. 3d 231, 235–36 (Fla. 4th DCA 2025). The court must first determine whether the allegations in the proposed amended complaint support the claim. *Id.* at 236. Thus, a plaintiff must sufficiently allege the defendant committed intentional misconduct or gross negligence.[1] *Cf.* § 768.72(2), Fla. Stat. ("A defendant may be held liable for

---

1. In this context, "intentional misconduct" is defined as "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(2)(a), Fla. Stat. "Gross negligence," on the other hand, exists where "the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." *Id.* § 768.72(2)(b).

6

punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."). "[I]f the allegations in the proposed amended complaint are sufficient, the court then must consider whether the plaintiff has established a reasonable evidentiary basis for recovering punitive damages consistent with those allegations." *Duff*, 414 So. 3d at 236 (quoting *Vaziri v. Jerkins*, 400 So. 3d 634, 637 (Fla. 4th DCA 2025)); *see also* § 768.72(1), Fla. Stat. ("In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.").

"In evaluating the sufficiency of the evidence proffered in support of a punitive damages claim, the evidence is viewed in a light favorable to the moving party." *Mohan*, 387 So. 3d at 482 (quoting *Wayne Frier Home Ctr. of Pensacola, Inc. v. Cadlerock Joint Venture, L.P.*, 16 So. 3d 1006, 1009 (Fla. 1st DCA 2009)). That said, the Florida Supreme Court explained section 768.72 "create[d] a substantive legal right *not* to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." *Globe Newspaper Co. v. King*, 658 So. 2d 518, 519 (Fla. 1995) (emphasis added).

Because Tenant's allegations support neither the claim for punitive damages nor the underlying claim of fraud in the inducement, the trial court erred in granting leave to amend.

First, in its amended motion, Tenant *only* sought punitive damages based on allegations of intentional misconduct citing section 768.72(2)(a). Yet the trial court found Tenant showed a reasonable basis for asserting a claim for punitive damages based on unalleged gross negligence. These are distinct bases for seeking punitive damages. *Cf. Vaziri*, 400 So. 3d at 637 ("[D]espite expressly recognizing that Plaintiff's proposed amended complaint did not contain sufficient allegations to support a punitive damages claim, the county court nonetheless granted the motion to amend. This error alone warrants

7

reversal."); *Varnedore v. Copeland*, 210 So. 3d 741, 745 (Fla. 5th DCA 2017) ("Absent sufficient allegations, there would be neither a reason nor a framework for analyzing the proffered evidentiary basis for a punitive damages claim."); *see also Athienitis v. Makris*, 346 So. 3d 732, 734 (Fla. 2d DCA 2022) ("It is well settled that an order adjudicating issues not presented by the pleadings, noticed to the parties, or litigated below denies fundamental due process." (quoting *Austin v. Austin*, 120 So. 3d 669, 675 (Fla. 1st DCA 2013))).

Second, while I agree with the majority that fraud in the inducement is a tort claim that *can* support a claim of punitive damages, "not every claim is sufficiently compelling to support an award." *See Yatak v. La Placita Grocery of Fort Pierce Corp.*, 383 So. 3d 497, 503 (Fla. 4th DCA 2024), *review denied,* No. SC2024-0696, 2025 WL 275134 (Fla. Jan. 23, 2025). Because Tenant's claim cannot stand, it also cannot provide a reasonable basis for punitive damages. *See Mohan*, 387 So. 3d at 484 ("No claim for punitive damages can exist if the underlying claim cannot exist." (quoting *Keen v. Jennings*, 327 So. 3d 435, 439 (Fla. 5th DCA 2021))); *Progressive Select Ins. v. Lloyd's of Shelton Auto Glass, LLC*, 396 So. 3d 916, 923 (Fla. 2d DCA 2024) ("[I]f it is clear that the underlying tort has not even been sufficiently alleged, much less supported by a reasonable basis in the record evidence or proffer, a court cannot logically conclude that the punitive damages standard has been satisfied.").

To recover for fraud in the inducement, the plaintiff must establish: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Yatak*, 383 So. 3d at 503 (quoting *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008)); *see also Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003). As to the first and second elements—whether Appellants made statements of material fact that they knew or should have known were false—Tenant's claim was explicitly, and exclusively, based on allegations that Appellants misrepresented its ability to sell smoothies at the mall. But this claim is disproven by the fact

8

that Tenant admittedly was approved to—and did in fact—sell smoothies under the Lease.

Even if Appellants were aware of the previous tenant's issues selling smoothies, omitting that information in pre-contract negotiations is not fraudulent absent a duty to disclose. *See Yatak*, 383 So. 3d at 504 ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." (quoting *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000))); *see also Behrman v. Allstate Ins.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) ("[O]missions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information."), *aff'd sub nom. Behrman v. Allstate Life Ins.*, 178 F. App'x. 862 (11th Cir. 2006). No such duty exists in this arm's length commercial transaction. *See Yatak*, 383 So. 3d at 504 ("[E]ven intentional nondisclosure of known material facts in a commercial real estate transaction is not actionable." (quoting *Green Acres, Inc. v. First Union Nat'l Bank of Fla.*, 637 So. 2d 363, 364 (Fla. 4th DCA 1994))); *Taylor Woodrow Homes*, 850 So. 2d at 541 ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."); *see also Behrman*, 388 F. Supp. 2d at 1351 ("In an arms-length transaction, neither party owes a duty to the other to act for that party's benefit or protection, or to disclose facts that the other party could have discovered through its own diligence.").

To the extent that Appellants may have made oral misrepresentations about the potential sale of smoothies, "a party may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." *Taylor Woodrow Homes*, 850 So. 2d at 542–43. The Lease provided for the sale of certain products, including smoothies, while also stating in no uncertain terms: "All menu items are subject to approval by mall management." Clearly, the contract covered the subject matter at issue. *See Yatak*, 383 So. 3d at 504 ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."

(quoting *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005))); *Parque Towers Devs., LLC v. Pilac Mgmt., Ltd.*, 395 So. 3d 189, 194 (Fla. 3d DCA 2024) (same), *reh'g denied* (July 9, 2024).

Finally, even if Appellants had knowingly made false statements, Tenant still could not assert it relied on these pre-contractual statements where it agreed to non-reliance clauses in the Lease.[2]  *See Billington v. Ginn-La Pine Island, Ltd., LLLP*,

---

2.  Per the terms of the Lease, Tenant explicitly denied reliance on extra-contractual representations of Landlord's agents:

> This Lease is an integrated agreement which contains the entire agreement between the parties as to the matters addressed herein and incorporates all prior discussions and agreements.  There are no agreements between the parties which are not contained herein, and *Tenant has not received or relied on any representations from Landlord or Landlord's agents.*  The Lease terms are intended by the parties as a final expression of their agreement with respect to such terms and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this Lease constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Lease.

(emphasis added).  Further, Tenant expressly disclaimed any representations or promises contradicted, qualified, or limited the Lease provisions:

> *Tenant acknowledges that no one has made any representations or promises to Tenant* regarding renewal or extension of the Term, limiting or

10

192 So. 3d 77, 84 (Fla. 5th DCA 2016) ("[W]e hold that the 'non-reliance' clauses in this case negate a claim for fraud in the inducement because Appellant cannot recant his contractual promises that he did not rely upon extrinsic representations."); *see also MSC Trading, S.A. v. Delgado*, No. 22-20075-CV, 2024 WL 3103942, at *4 (S.D. Fla. May 20, 2024) ("[E]ven if Defendants could assert that the oral representations could amount to fraudulent misrepresentations of fact, Defendants could not have possibly relied on them, as a matter of law, given the express provisions of the Agreement that fully negates any such reliance."), *report and recommendation adopted,* No. 1:22-CV-20075-DPG, 2024 WL 3564585 (S.D. Fla. July 29, 2024).

Because the trial court erred in granting the motion to amend based on unalleged gross negligence and because the underlying claim could not stand, I would reverse the order granting the motion.

---

eliminating Landlord's right to terminate on short notice as set forth herein, any potential for relocation or possession of other space in the Shopping Center, or *in any other manner contradicting, qualifying, or limiting the express provisions hereof.*

(emphasis added).

11